## COURVOISIER v. RAYMOND.

1. JURORS—EXCUSE—QUALIFICATION.

Service as a juror in another court within one year next preceding is not, under the act of 1889 (Mills' Ann. Stats., sec. 2595), sufficient to entitle the juror to be excused from service; neither does it constitute a ground of challenge for cause.

2. EVIDENCE—HYPOTHETICAL QUESTIONS.

Questions to medical experts calling for their opinion upon a hypothesis within the probable or possible range of the evidence are permissible.

3. SAME—RECORD.

Where proof of a conviction of crime is admissible, the record of the conviction is usually the best evidence thereof; and as a general rule, parol proof of the fact should, on objection, be excluded.

4. SAME.

Evidence the tendency of which is to raise collateral questions and thereby divert the attention of the jury from the real issues should be excluded.

5. EXEMPLARY DAMAGES.

Exemplary damages may, in the cases specified in the statute, be awarded for an injury inflicted maliciously, or in wanton and reckless disregard of the plaintiff's rights.

6. EVIDENCE — FINANCIAL CONDITION OF DEFENDANT IN DAMAGE CASES.

Where exemplary damages may be awarded, the financial condition of the defendant may be shown.

7. SELF-DEFENSE.

A defendant is not liable in damages to one wounded by a shot fired by him in necessary self-defense, even though the plaintiff was not his assailant.

8. SAME.

When a defendant in a civil action for damages sustained by reason of a gunshot wound inflicted by him justifies under a plea of necessary self-defense, he must satisfy the jury not only that he acted honestly in using force, but that, under the circumstances, his fears and the means of defense made use of were reasonable.

*Appeal from the District Court of Arapahoe County.*

EDWIN S. RAYMOND, appellee, as plaintiff below, complains of Anguste Courvoisier, appellant, and alleges that on

the 12th day of June, A. D. 1892, plaintiff was a regularly appointed and duly qualified acting special policeman in and for the city of Denver; that while engaged in the discharge of his duties as such special policeman, the defendant shot him in the abdomen, thereby causing a serious and painful wound; that in so doing the defendant acted wilfully, knowingly and maliciously, and without any reasonable cause.

It is further alleged that by reason of the wound so received plaintiff was confined to his bed for a period of ten days, during which time he was obliged to employ, and did employ, a physician and nurse, the reasonable value of such services being one hundred (100) dollars, which sum plaintiff had obligated himself to pay; that the wound rendered him incapable of performing his duties as special policeman for a period of three weeks.

It is further alleged that the injury caused the plaintiff great physical pain, and permanently impaired his health. Plaintiff alleges special and general damages to the amount of thirty thousand, one hundred and fifty (30,150) dollars, and asks judgment for that sum, with costs.

The defendant, answering the complaint, denies each allegation thereof, and, in addition to such denials, pleads five separate defenses. These defenses are all in effect a justification by reason of unavoidable necessity. A trial resulted in a verdict and judgment for plaintiff for the sum of three thousand, one hundred and forty-three (3,143) dollars. To reverse this judgment, the cause is brought here by appeal.

Mr. OSCAR REUTER and Mr. WM. YOUNG, for appellant.

Mr. F. J. HANGS and Mr. S. S. ABBOTT, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

It is admitted or proven beyond controversy that appellee received a gunshot wound at the hands of the appellant at

the time and place designated in the complaint, and that as the result of such wound the appellee was seriously injured. It is further shown that the shooting occurred under the following circumstances :

That Mr. Courvoisier, on the night in question, was asleep in his bed in the second story of a brick building, situate at the corner of South Broadway and Dakota streets in South Denver; that he occupied a portion of the lower floor of this building as a jewelry store. He was aroused from his bed shortly after midnight by parties shaking or trying to open the door of the jewelry store. These parties, when asked by him as to what they wanted, insisted upon being admitted, and upon his refusal to comply with this request, they used profane and abusive epithets toward him. Being unable to gain admission, they broke some signs upon the front of the building, and then entered the building by another entrance, and passing upstairs commenced knocking upon the door of a room where defendant's sister was sleeping. Courvoisier partly dressed himself, and, taking his revolver, went upstairs and expelled the intruders from the building. In doing this he passed downstairs and out on the sidewalk as far as the entrance to his store, which was at the corner of the building. The parties expelled from the building, upon reaching the rear of the store, were joined by two or three others. In order to frighten these parties away, the defendant fired a shot in the air, but instead of retreating they passed around to the street in front, throwing stones and brickbats at the defendant, whereupon he fired a second and perhaps a third shot. The first shot fired attracted the attention of plaintiff Raymond and two deputy sheriffs, who were at the Tramway depot, across the street. These officers started toward Mr. Courvoisier, who still continued to shoot, but two of them stopped when they reached the men in the street, for the purpose of arresting them, Mr. Raymond alone proceeding towards the defendant, calling out to him that he was an officer and to stop shooting. Although the night was dark, the street was well lighted by electricity, and when the officer

approached him defendant shaded his eyes, and, taking deliberate aim, fired, causing the injury complained of.

The plaintiff's theory of the case is that he was a duly authorized police officer, and in the discharge of his duties at the time ; that the defendant was committing a breach of the peace, and that the defendant, knowing him to be a police officer, recklessly fired the shot in question.

The defendant claims that the plaintiff was approaching him at the time in a threatening attitude, and that the surrounding circumstances were such as to cause a reasonable man to believe that his life was in danger, and that it was necessary to shoot in self-defense, and that defendant did so believe at the time of firing the shot.

The first error argued brings up for review the action of the district court in overruling a challenge interposed by the defendant to the juror Gibbons. The ground of this challenge will appear from the following :

" Q. Have you served as a juror within the year last past ? A. I was called a few weeks ago on one case in the county court.

" Q. As a talesman ? A. Yes, sir.

" The Court. When did you serve, Mr. Gibbons ? A. A few weeks ago.

" The Court. Since the first of January ? A. Yes, sir."

The statute relied upon to support the challenge reads as follows :

" The fact that any juror in any district or county court shall have served as juror of the regular panel, or as talesman, in either of said courts at anytime within the year next preceding, shall be a sufficient excuse for such juror from service in the same court and may also be ground for challenge for cause to such individual juror." Session Laws, 1889, page 220, sec. 1.

The statute limits the exception to service a second time within the year *in the same court*, and we think it was likewise intended to thus restrict this ground of challenge for cause. This has been the uniform practice under the stat-

ute, and we think it must be upheld as the obvious meaning of the act.

The second error assigned is upon the overruling of defendant's objections to certain hypothetical questions propounded by plaintiff to medical experts. These questions called for the opinion of the witnesses as to the natural result of the wound received by plaintiff. It is claimed that the questions do not describe the wound with sufficient certainty, and that the evidence of the extent of the injury is not sufficient to form a basis for any hypothetical questions or for expert opinions upon the probable effects of the wound. We think the objections to these questions were properly overruled. The questions contain such a description of the wound as is easily understood by the lay mind, and the answers show that it was fully understood by the experts. The questions are framed upon the assumption that the evidence tended to prove certain facts. This assumption, being within the probable or possible range of the evidence, is permissible. *Jackson v. Burnham*, 20 Colo. 532.

The third assignment of error challenges the refusal of the court to permit witnesses for the defendant to testify as to whether or not, as a result of a criminal prosecution, one of the participants was convicted of "throwing a stone and hitting Mr. Courvoisier that night." The objection to this question was properly sustained. If proof of such conviction was admissible, the record is the best evidence thereof, except in the instances specified by statute. Mills' Annotated Statutes, sec. 4822. But as this action is between other parties, even the record is not admissible in this case.

It was attempted to prove by the witness Reed, who was at the time marshal of the town of South Denver, that the neighborhood in the immediate vicinity of defendant's house had been the scene of frequent robberies and disturbances shortly prior to this shooting. This evidence was offered for the purpose of justifying the defendant's action. It is claimed that conduct which would cause no apprehension in a quiet and peaceful neighborhood would naturally and rea-

sonably excite alarm if disturbances and breaches of the peace were frequent. We think, however, the court was justified in refusing this evidence. Its tendency is to raise collateral issues, and thereby divert the attention of the jury.

Under the fourth assignment of error it is claimed that evidence of the financial standing of the defendant was not admissible. If the jury believed from the evidence that the shooting was done with malice, or that the injury was the result of a wanton and reckless disregard of plaintiff's rights and not in necessary self-defense, exemplary damages might have been awarded, and wherever such damages are permissible, the financial condition of the defendant may be shown. In a number of cases, commencing with *Murphy v. Hobbs*, 7 Colo. 541, it has been held that in civil actions for injuries resulting from torts, exemplary damages, as a punishment, were not permissible, if the offense is punishable under the criminal laws. These decisions were based upon the common law. In 1889 the legislature provided, by statute, that exemplary damages may be given in certain cases. Before the passage of this act the question was one upon which the courts disagreed, but the statute has now settled the practice in this state.

The next error assigned relates to the instructions given by the court to the jury and to those requested by the defendant and refused by the court. The second instruction given by the court was clearly erroneous. The instruction is as follows: " The court instructs you that if you believe from the evidence, that, at the time the defendant shot the plaintiff, the plaintiff was not assaulting the defendant, then your verdict should be for the plaintiff."

The vice of this instruction is that it excluded from the jury a full consideration of the justification claimed by the defendant. The evidence for the plaintiff tends to show that the shooting, if not malicious, was wanton and reckless, but the evidence for the defendant tends to show that the circumstances surrounding him at the time of the shooting were such as to lead a reasonable man to believe that his life

was in danger, or that he was in danger of receiving great bodily harm at the hands of the plaintiff, and the defendant testified that he did so believe.

He swears that his house was invaded shortly after midnight by two men, whom he supposed to be burglars; that when ejected, they were joined on the outside by three or four others; that the crowd so formed assaulted him with stones and other missiles, when, to frighten them away, he shot into the air; that instead of going away someone approached him from the direction of the crowd; that he supposed this person to be one of the rioters, and did not ascertain that it was the plaintiff until after the shooting. He says that he had had no previous acquaintance with plaintiff; that he did not know that he was a police officer, or that there were any police officers in the town of South Denver; that he heard nothing said at the time by the plaintiff or anyone else that caused him to think the plaintiff was an officer; that his eyesight was greatly impaired, so that he was obliged to use glasses, and that he was without glasses at the time of the shooting, and for this reason could not see distinctly. He then adds: "I saw a man come away from the bunch of men and come up towards me, and as I looked around I saw this man put his hand to his hip pocket. I didn't think I had time to jump aside, and therefore turned around and fired at him. I had no doubts but it was somebody that had come to rob me, because some weeks before Mr. Wilson's store was robbed. It is next door to mine."

By this evidence two phases of the transaction are presented for consideration: *First*, was the plaintiff assaulting the defendant at the time plaintiff was shot? *Second*, if not, was there sufficient evidence of justification for the consideration of the jury? The first question was properly submitted, but the second was excluded by the instruction under review. The defendant's justification did not rest entirely upon the proof of assault by the plaintiff. A riot was in progress, and the defendant swears that he was attacked with missiles, hit with stones, brickbats, etc.; that he shot

plaintiff, supposing him to be one of the rioters. We must assume these facts as established in reviewing the instruction, as we cannot say what the jury might have found had this evidence been submitted to them under a proper charge.

By the second instruction the conduct of those who started the fracas was eliminated from the consideration of the jury. If the jury believed from the evidence that the defendant would have been justified in shooting one of the rioters had such person advanced towards him as did the plaintiff, then it became important to determine whether the defendant mistook plaintiff for one of the rioters, and if such a mistake was in fact made, was it excusable in the light of all the circumstances leading up to and surrounding the commission of the act? If these issues had been resolved by the jury in favor of the defendant, he would have been entitled to a judgment. *Morris v. Platt*, 32 Conn. 75; *Patton v. People*, 18 Mich. 318; *Kent v. Cole*, 84 Mich. 579; *Higgins v. Minaghan*, 76 Wis. 298. 248

The opinion in the first of the cases above cited contains an exhaustive review of the authorities and is very instructive. The action was for damages resulting from a pistol shot wound. The defendant justified under the plea of self-defense. The proof for the plaintiff tended to show that he was a mere bystander at a riot, when he received a shot aimed at another, and the court held that, if the defendant was justified in firing the shot at his antagonist, he was not liable to the plaintiff, for the reason that the act of shooting was lawful under the circumstances.

Where a defendant in a civil action like the one before us attempts to justify on a plea of necessary self-defense, he must satisfy the jury not only that he acted honestly in using force, but that his fears were reasonable under the circumstances; and also as to the reasonableness of the means made use of. In this case perhaps the verdict would not have been different had the jury been properly instructed, but it might have been, and therefore the judgment must be reversed.

*Reversed.*