MARTIN COOK, ADMINISTRATOR OF JACOB WYBLE, DE-CEASED, v. THE AMERICAN E. C. AND SCHULTZE GUN-POWDER COMPANY.

Argued June 3, 1903—Decided November 9, 1903.

1. A verdict cannot be sustained upon a theory of the law contrary to that upon which the case was submitted to the jury.
2. In an action for death of a boy thirteen years of age, where the father was the sole beneficiary of the action, it appeared that the father had for three years abandoned his wife and family, including this son, and had entered into a bigamous marriage with another woman, by whom he had had a child and with whom he was living at the time the son met his death. The decedent was living with his mother and was earning fifty cents per day at the time of his death. *Held,* under the circumstances of the case, that the expectation of substantial pecuniary benefit to the father from the continued life of the son was so remote that a verdict for $2,500 damages was clearly excessive.

---

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON, HENDRICKSON and PITNEY.

For the plaintiff, *George T. Werts.*

For the defendant, *Michael Dunn, Willard W. Cutler* and *Jacob W. De Yoe.*

The opinion of the court was delivered by

PITNEY, J.    This is an action for death by wrongful act. The deceased, a boy less than thirteen years of age, entered defendant's employ on August 21st, 1901, and was killed by an explosion on September 12th.   At the time of the fatal occurrence he was working at common labor upon the defendant's premises, at a place near to a small brick building known as the Little Magazine, designed for the storage of sample packages of sporting powders in manufactured form. The building had been out of use for some time, pending repairs which had just been completed.   On the date last mentioned two trusted employes of the defendant, with the aid of a horse and wagon, were bringing powder samples from a building situate at some distance and placing them in the Little Magazine.   They had thus placed one wagon load in the latter building and had the loaded wagon again standing at the door while they were unloading it.   At this juncture an explosion occurred, killing these two men and also the plaintiff's intestate, who was standing at a distance of about forty feet.   The powder was contained in tin canisters of moderate size and properly sealed; it was, in short, packed in the same manner as if intended for market.   The evidence showed without contradiction that a careful inspection of this sample stock had been made by an experienced chemist on the same day and just prior to its being removed to the Little Magazine.   He found the powder in perfect condition. There was nothing to show any negligence on the part of the men who were moving the powder.

The jury rendered a verdict in favor of the plaintiff.

The Little Magazine not having been in use for the storage of powder at the time the deceased entered the employ of the defendant, and there being evidence that the deceased had not been informed that it was intended to again use the building for that purpose, counsel for the plaintiff endeavors to sustain the verdict on the theory that the act of defendant in placing powder therein converted the place where the deceased was working from a place of safety into a place of danger, and

that for this reason the defendant is liable for his death, irrespective of the cause of the explosion. It is insisted that the evidence tends to show that such powder, from its very nature, is liable to explode at times, even in the absence of negligent manufacture, inspection or handling. One of the plaintiff's witnesses, a chemist by profession, who testified in the capacity of an expert, gave certain opinion evidence, on the basis of which it is claimed that the manufactured powders of the defendant are chemically unstable and liable to explode spontaneously. His testimony to this effect, however, was speculative and theoretical, it being admitted by the witness that actual samples of defendant's powder, examined by him, were entirely stable and showed no signs of decomposition. The great weight of the evidence shows that the powder, in its manufactured form, is stable and not liable to explode from decomposition. It is difficult therefore to find in the evidence any basis of fact for the plaintiff's theory that the powder, in its nature, was so liable to explode that the mere act of storing it near to the place where the decedent was at work, without notice to him, was a breach of the master's duty.

It is idle, however, to further consider the evidence that is said to support this theory of the plaintiff's case. Nor need we test the validity of the legal argument that is invoked to sustain it. And this for the reason that the verdict was rendered upon an entirely different theory. The learned trial judge instructed the jury in substance that, if they found from the evidence merely that the accident happened and were unable to ascertain from the evidence the cause of the accident, and there were no circumstances disclosed from which negligent conduct of the defendant conducing to the explosion could reasonably be inferred, the plaintiff could not recover; that the defendant had the right to put the deceased to work at the place where he was working so long as it used reasonable care that the place was safe, and that if it discharged this duty the defendant would not be liable; and that if the defendant had caused the powder in question to be properly inspected and notwithstanding this the explosion occurred from some cause

which a proper inspection did not reveal, the defendant was not liable.

By these instructions the determination of the defendant's liability was limited in such manner that, in the absence of negligent conduct of the defendant or its employes conducing to the explosion, the defendant was entitled to a verdict. We cannot, therefore, sustain the verdict on the theory that, in the absence of negligence of this character, the plaintiff was entitled to a verdict on some other ground not submitted to the jury's determination. *Sensfelder* v. *Stokes,* 40 *Vroom* 86; *Hays* v. *Pennsylvania Railroad Co.,* 13 *Id.* 446; *Marls* v. *Cumberland Insurance Co.,* 15 *Id.* 478; *Halsey* v. *Lehigh Valley Railroad Co.,* 16 *Id.* 26.

Upon those questions that, by the judge's charge, were made essential to the liability of the defendant, the verdict of the jury is against the clear weight of the evidence if, indeed, it is not entirely unsupported by any evidence. There was plenary evidence to show that great care was used by defendant's servants in the manufacture, inspection and handling of the powder.

Had we reached a different conclusion upon the question of defendant's liability, a new trial would nevertheless have been necessary because of the excesssive award of damages included in the present verdict. The next of kin of the deceased was his father who, by the terms of the statute, is thus made the sole beneficiary of the action. The damages are by law limited to the pecuniary injury that resulted to the father from the death of the son. In this case the father, three years before the fatal occurrence, had abandoned his wife and family, including this son, had departed from this state and entered into a bigamous marriage with another woman, by whom he had had a child and with whom he was living at the time the plaintiff's intestate met his death.

The deceased was about thirteen years of age, was living with his mother and was earning fifty cents per day at the time of his death. His circumstances were such as to render it extremely improbable that he would have been able to earn

between the time of his death and his arrival at full age, anything more than would be barely sufficient for his own support. At the time of his death he was not only deserted but in effect emancipated by his father. There was no reasonable ground to anticipate a revocation of that emancipation, or to suppose that, in case of its revocation, the father would profit largely from the son's earnings during minority. As to any expectation that after the son's arrival at full age he would contribute anything voluntarily toward his father's support, such expectation was wholly speculative in view of the father's abandonment of the boy, and was so contrary to what was reasonable and probable under the circumstances that it could hardly be taken at all into consideration in estimating the damages. Yet the jury rendered a verdict for $2,500, an amount so clearly excessive as to be sufficient of itself to demonstrate error in the jury's method of considering the case. It is doubtful whether, under circumstances such as are here presented, a verdict for more than nominal damages could be sustained, but this question need not now be de-determined.

The rule to show cause will be made absolute.