EMMET QUEEN ET AL., PLAINTIFFS, v. EDWARD H. JENNINGS, DEFENDANT.

Argued June 4, 1919—Decided November 5, 1919.

1. The duty which an agent undertakes, the obligation he assumes as a condition of his right to demand commissions is to bring the buyer and seller to an agreement. The agent, to earn commissions on the sale of property, must be the efficient or procuring cause of the sale.

2. When the question appears by the evidence to be disputed, the question of the person with whom a contract was made should be left to the jury. When there is real doubt upon the point, such doubt must be solved by the jury as a fact.

3. In this case, the evidence examined and held, whether the plaintiff was discharged in good faith, or whether he was the efficient or procuring cause of the sale, were questions of fact properly submitted by the trial court to be determined by the jury.

4. The verdict of a jury may rest upon inferences, such as jurors are permitted to draw. It will not be set aside, although in the opinion of the court the jury might upon the evidence have found otherwise.

5. To justify the setting aside of a verdict as against the weight of evidence, it must be so clear as to give rise to an inference, that the verdict was the result of mistake, passion or prejudice.

6. The affidavit or testimony of a juror will not be received for the purpose of impugning or destroying a verdict in which he has joined, or proving the ground of the verdict. This on the grounds of public policy. But misconduct on the part of the jury or the court officers in charge of the jury may be shown by proper testimony.

7. A verdict cannot be supported upon a theory of the law contrary to that upon which the case was submitted to the jury.

8. Under the Practice act (*Pamph. L.* 1912, *p.* 397, ¶¶ 72, 73) a new trial shall only be granted of the question or questions with respect to which the verdict is found to be wrong, if separable, or where the new trial is ordered because the damages are excessive or inadequate, and for no other reason, the verdict shall be set aside only in respect of the damages, and shall stand good in all other respects.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices MINTURN and BLACK.

For the plaintiffs, *King & Vogt, George A. Bourgeois, Brainard Avery, George W. Alger* (of the New York bar) and *Jay E. Whiting* on the brief.

For the defendant, *Lindabury, Depue & Faulks, Richard V. Lindabury, Clarence L. Cole* and *William M. Robinson* (of the Pittsburgh bar) on the brief.

The opinion of the court was delivered by

BLACK, J. The trial of this case, at the Atlantic Circuit, resulted in a verdict for the plaintiff for $450,452. The defendant obtained the rule to show cause, reserving all the exceptions taken throughout the trial. The reasons assigned for a new trial by the defendant are that the verdict is against the clear weight of the evidence, that it is contrary to and inconsistent with the charge of the court, the issues raised by the pleadings and the evidence produced in support of the issues. Also that it is the result of prejudice or passion.

The purpose of the suit was to recover commissions alleged to have been agreed to be paid to the plaintiff by the defendant for procuring the sale of nine hundred and forty-one thousand shares of the common stock of the Pure Oil Company, a New Jersey corporation. The contract for such commissions is alleged to have been made on or about the 20th day of March, 1916, at the city of Pittsburgh, in the State of Pennsylvania. The contract was not in writing. The compensation for such service was to be the sum of one dollar

($1) for each share of such stock sold, at a price satisfactory to the defendant. The stock, it is alleged, was sold through the plaintiff to William A. Read & Company and Ohio Cities Gas Company for $23,054,500, a price satisfactory to the defendant, which was at the rate of $24.50 per share. The defendant denies that the plaintiff sold to or secured William A. Read & Company and Ohio Cities Gas Company, or either of them, to purchase such shares, but admits that in May or June, 1917, a large number of such shares were sold to the two above-named companies. The defendant, in his testimony at page 390 of the record, admits that he made a contract with the plaintiff, based upon twenty-five cents a share, and no more, and that contract was always in existence until April 19th, 1917, when the deal was broken off. The two problems, therefore, for solution on the question of liability are: Was the contract terminated between the parties on April 19th, 1917, and, if not, was the plaintiff the efficient or procuring cause of the sale of the stock? These questions were clearly and pointedly submitted to the jury by the trial judge. Does the testimony, therefore, justify the conclusion reached by the jury in finding both of these questions in favor of the plaintiff? Or is the weight of the evidence so clearly against the verdict that it justified this court in setting it aside? Our examination of the record leads us to the conclusion that both of these questions must be answered in favor of the plaintiff. On the first proposition the defendant insists that the contract was terminated on the 19th of April, 1917, immediately after the negotiations with William A. Read & Company were broken off. "I told him that I was completely through with it and washed my hands of the whole business."

The plaintiff denies this and testifies that Jennings, the defendant, wanted him to revive it, *i. e.,* the negotiations, which he did, "and for me to keep my ear close to the ground and see what was going on and keep it going," which I did. He saw Mr. Martin, of William A. Read & Company, the next day; "he told me several times later that things were moving along." On cross-examination, after being shown Jennings'

telegram of the 21st, in answer to Queen's telegram of the same date, Queen was asked this question: "That doesn't look as if you were continuing negotiations at his request." "*A*. Oh, I don't claim to have continued them at that time; he knew that; he got pretty well in mind that the trade was practically made. I agree with you he tried to lose me. He never lost Martin, though, or Read." The jury had the benefit of seeing both parties. This testimony raised a jury question. The jury found the fact in favor of the plaintiff and against the defendant's claim of discharge. This question was clearly and properly left to the jury to say whether the plaintiff Queen was discharged, and if discharged, whether such discharge was in good faith, the trial judge saying: "Now, in determining this question, you must do as I have said, search the facts diligently and find out what the actual truth is."

The next question is, Was the plaintiff Queen the efficient or procuring cause of the sale of the stock? The legal rule applicable to the facts is well and firmly settled.

The duty which an agent undertakes, the obligation he assumes as a condition of his right to demand commissions, is to bring the buyer and seller to an agreement. The agent must be the procuring or efficient cause of the sale. *Vreeland* v. *Vetterlein,* 33 *N. J. L.* 247; *Sibbald* v. *Bethlehem Iron Co.,* 83 *N. Y.* 378; 19 *Cyc.* 257; 9 *C. J.* 613; 4 *R. C. L.* 298; ¶ 42.

Most of the testimony at the trial was directed at this point. The case took five days for trial; the record consists of a bulky volume of five hundred and fifty-six pages. The plaintiffs' exhibits are one hundred and forty-three, mostly letters and telegrams. The controversy is not so much over disputed facts as the correct conclusion to be drawn from admitted or conceded facts. Thus, the contract by which the shares of stock of the Pure Oil Company was sold was in writing. It was put in evidence by the plaintiff. It is not disputed that the final negotiations for the sale were made by Norton H. Weber, the vice president and treasurer of the Pure Oil Company, and Mr. B. G. Daws, of the Ohio Cities

Gas Company. The buyer in the contract named is not William A. Read & Company, but Edward M. Hagar. Mr. Arlington C. Harvey, the attorney for the Ohio Cities Gas Company, testified that he and Mr. Eugene Mackay, the attorney for the Pure Oil Company, drew the contract for the sale of the stock in the Bellevue-Stratford Hotel, in Philadelphia. The contract is dated June 2d, 1917. The purchaser's name was left blank. Mr. Mackay gave Mr. Weber instructions what to do with the contract, "that he was to take the contract and after it was signed by all the directors of the Pure Oil Company, he was to take it to New York and have it signed by whoever William A. Read & Company suggested, and he would fill in that blank, whosever name was to go there; Mr. Weber was to have it signed by that man, and that Mr. Weber, without letting it out of his possession, was to have it assigned * * * and have the contract assigned by Mr. Hagar to the Ohio Cities Gas Company." Mr. Robert W. Martin, a member of the firm of William A. Read & Company, testified that Mr. Edward M. Hagar was selected by that firm as a party to the contract, "as a function in connection with our underwriting of this transaction." The contract shows that it was signed by Mr. Edward M. Hagar; that it was then assigned and transferred to the Ohio Cities Gas Company and that company assumes and agrees and becomes bound by all the duties, obligations and liabilities of the purchaser, Edward M. Hagar. It would serve no useful purpose to recite the testimony at length. The jury found, as a fact, that Hagar was William A. Read & Company's agent; that the sale of stock of the Pure Oil Company was made to William A. Read & Company and not to Ohio Cities Gas Company, as contended by the defendant. The jury also found that the plaintiff Queen was the efficient or procuring cause of the sale.

Chief Justice Beasley said, in the case of *Vreeland* v. *Vetterlein*, 33 *N. J. L.* 249, when there is real doubt upon that point, such doubt must be solved by the jury; when the question appears by the evidence to be disputed, the question of the person with whom a contract was made should be left to the jury. *Diament* v. *Colloty*, 66 *Id.* 295; *Longstreth* v.

*Korb,* 64 *Id.* 112; 19 *Cyc.* 286; 9 *C. J.* 658. The trial judge submitted this question to the jury and concluded by saying, the plaintiff cannot recover in this case unless the sale was to William A. Read & Company. A verdict that rests upon inferences, such as jurors are permitted to draw, is normally conclusive. *Smith* v. *Lorillard Co.,* 67 *N. J. L.* 361.

The court should not set a verdict aside, even, although, in its opinion the jury might, upon the evidence, have found otherwise. *Knickerbocker Ice Co.* v. *Anderson,* 31 *N. J. L.* 333. To justify the setting aside of a verdict, as against the weight of evidence, it must be so clear as to give rise to an inference that it was the result of mistake, passion or prejudice. *Floersch* v. *Donnell,* 82 *Id.* 357.

After the verdict was found by the jury, complaint was made to the trial court that the jury had been improperly influenced by the constable in charge of the jury. This complaint was investigated by the prosecutor of the pleas of Atlantic county, at the request of the trial court; each of the jurors was sworn and the testimony taken down and transmitted to the court, which has been returned with the record of the case to this court, on which a reason is based for a new trial. We have examined this testimony and find nothing therein which justifies the allegation that the jury was influenced by the constable in charge in reaching a verdict. While the action of the constable in charge was highly improper we cannot say that it in anywise influenced the jury in reaching the verdict.

This subject was discussed by this court in the case of *Hutchinson* v. *Consumers Coal Co.,* 36 *N. J. L.* 24, where it was said: Affidavits of jurors, when offered for the purpose of contradicting or destroying the verdict have been regarded always by this court, as against the policy of the law and on that ground have been invariably rejected, such testimony should be excluded on grounds of public policy. The affidavit of a juror will not be received for the purpose of impugning or destroying the verdict in which he has joined, or of proving the ground of the verdict. *Lindauer* v. *Teeter,* 41 *Id.* 255, 259. Of course, misconduct on either the part of the jury or the

court officers in charge of the jury may be shown by proper testimony or that any improper influence was exerted to induce a verdict. *Duffy* v. *McKenna,* 82 *Id.* 62, but the testimony does not show any such circumstances in this case.

The verdict was for the plaintiff for $450,452, at the rate of fifty cents a share. The plaintiff alleged the contract was one dollar a share, and so testified. The defendant claimed the contract was only twenty-five cents a share, and so testified. Nobody claimed that it was fifty cents a share. There are only two references in the testimony to fifty cents a share. The trial judge submitted to the jury to determine whether the contract for compensation was one dollar per share or twenty-five cents per share. The amount of the verdict was therefore contrary to and inconsistent with the issue raised by the pleadings—contrary to and inconsistent with the evidence produced in support of the issue made by the pleadings and also with the charge of the court.

A verdict cannot be supported upon a theory of the law contrary to that upon which the case was submitted to the jury. *Sensfelder* v. *Stokes,* 69 *N. J. L.* 86; *Cook* v. *American, &c., Gunpowder Co.,* 70 *Id.* 65. The evidence must show a case within the legal rules upon which the court submits the case to the jury. *Bowlby* v. *Town of Phillipsburg,* 83 *Id.* 377. That the verdict must be supported by the evidence is elementary. But under the Practice act (*Pamph. L.* 1912, *p.* 397, ¶¶ 72, 73) a new trial shall only be granted of the question or questions with respect to which the verdict or decision is found to be wrong, if separable or when the new trial is ordered, because the damages are excessive or inadequate, and for no other reason, the verdict shall be set aside only in respect of the damages, and shall stand good in all other respects. This case is within the provisions of that act. *Young* v. *Society, &c., of Verona,* 91 *N. J. L.* 310.

The only question with respect to which the verdict is found to be wrong is the measure of damages. The rule will be discharged as to liability; a new trial will be granted, but limited to the question of damages only; the verdict shall stand good in all other respects.