WANDA M. BOWEN, ADMINISTRATRIX AD PROSEQUEN-
DUM OF THE ESTATE OF JOEL WARREN ROSE, DE-
CEASED, PLAINTIFF, v. HEALY'S, INCORPORATED,
AND/OR HEALY'S SPECIAL TOURS, INCORPORATED,
A CORPORATION, DEFENDANT.

JAMES H. FISHER, BY HIS FATHER AND NEXT FRIEND,
HARRY I. FISHER, AND HARRY I. FISHER, IN HIS
OWN RIGHT, PLAINTIFFS, v. HEALY'S, INCORPO-
RATED, AND/OR HEALY'S SPECIAL TOURS, INCORPO-
RATED, A CORPORATION, DEFENDANT.

GERTRUDE NORBURY, BY HER FATHER AND NEXT
FRIEND, HEATH NORBURY, AND HEATH NORBURY,
IN HIS OWN RIGHT, PLAINTIFFS, v. HEALY'S, INCOR-
PORATED, AND/OR HEALY'S SPECIAL TOURS, INCOR-
PORATED, A CORPORATION, DEFENDANT.

MARY NORBURY, BY HER FATHER AND NEXT FRIEND,
HEATH NORBURY, AND HEATH NORBURY, IN HIS
OWN RIGHT, PLAINTIFFS, v. HEALY'S, INCORPO-
RATED, AND/OR HEALY'S SPECIAL TOURS, INCOR-
PORATED, A CORPORATION, DEFENDANT.

EVERETT NORBURY, BY HIS FATHER AND NEXT FRIEND,
HEATH NORBURY, AND HEATH NORBURY, IN HIS
OWN RIGHT, PLAINTIFFS, v. HEALY'S, INCORPO-
RATED, AND/OR HEALY'S SPECIAL TOURS, INCOR-
PORATED, A CORPORATION, DEFENDANT.

Decided January 22, 1938.

For the plaintiffs, *Samuel T. French* and *French B. Loveland.*

For the defendant, *Cecil W. Rotzell, Martin J. Greenblatt* and *T. Millet Hand.*

JAYNE, C. C. J.   The mishap which occasioned this litigation occurred on March 6th, 1937.  On the afternoon of that day a Chevrolet automobile owned by the Reverend Joel Rose was being driven by Everett Norbury over the highway known as Delsea Drive near Malaga in Gloucester county. Mr. Rose, Mary Norbury, Gertrude Norbury and James Fisher were passengers in the automobile.  Their contemplated destination was Woodstown.  A motor bus operated by the defendant, Healy's Special Tours, Incorporated, approached on the intersecting highway known as New Delsea Drive.  At the junction of these two highways the vehicles came into collision.  Bodily injuries and incidental losses resulted from the occurrence of this collision.  Mr. Rose suffered fatal injury.   The five separate actions, above entitled, were thereafter instituted and all of the alleged causes of action were subsequently adjudicated in the one trial.  The jury rendered verdicts against the defendant and in favor of the plaintiffs in each action.  Damages were awarded to each plaintiff in the amounts here stated: $10,000 to Wanda M. Bowen, administratrix *ad prosequendum* of Joel Rose, deceased; $15,000 to James H. Fisher; $1,451 to Harry I. Fisher; $15,000 to Mary Norbury; $500 to Gertrude Norbury; $500 to Everett Norbury and $2,236.70 to Heath Norbury.

In each action the defendant has a rule to show cause why the verdict should not be nullified and a new trial ordered. The predominant reasons written down by the defendant aver that the verdicts are (1) against the weight of the evidence; (2) contrary to the evidence, and (3) the result of prejudice, passion and sympathy.  Moreover, it is asserted that the awards of damages to the administratrix, to James H. Fisher and to Mary Norbury are exorbitant.  The verdict as rendered in favor of the plaintiff Heath Norbury was formerly criticised but at the argument all criticism of it was expressly abandoned.

The allowance of a new trial of all of these actions is ardently advocated on behalf of the defendant. It is true that an application for a new trial is addressed to the judicial discretion of the court. *Furman* v. *Applegate,* 23 *N. J. L.* 28, 33; *Albert* v. *Hart,* 44 *Id.* 366; *Delaware, Lackawanna and Western Railroad Co.* v. *Nevelle,* 51 *Id.* 332; 19 *Atl. Rep.* 538; *Central Railroad Co.* v. *Tunison,* 55 *N. J. L.* 561; 27 *Atl. Rep.* 929; *Gaffney* v. *Illingsworth,* 90 *N. J. L.* 490; 101 *Atl. Rep.* 243; *Robinson* v. *Payne,* 99 *N. J. L.* 135; 122 *Atl. Rep.* 882; *Gormley* v. *Gasiorowski,* 110 *N. J. L.* 287, 289; 164 *Atl. Rep.* 440; *Rossman* v. *Newbon,* 112 *N. J. L.* 261; 170 *Atl. Rep.* 230; *Juliano* v. *Abeles,* 114 *N. J. L.* 510; 177 *Atl. Rep.* 666. It is not, however, a boundless and illimitable discretion which can be peremptorily exercised. It is circumscribed by certain definitely established rules. A verdict unsupported by any credible evidence must be set aside. *Oakley* v. *Emmons,* 73 *N. J. L.* 206; 62 *Atl. Rep.* 996; *Northern Railroad Co.* v. *Demarest,* 94 *N. J. L.* 68; 108 *Atl. Rep.* 376, a verdict cannot be sustained on a theory not submitted. *Hays* v. *Pennsylvania Railroad Co.,* 42 *N. J. L.* 446; *Bowlby* v. *Phillipsburg,* 83 *Id.* 377; 84 *Atl. Rep.* 1051; *Morlock* v. *Kohn,* 7 *N. J. Mis. R.* 381; 145 *Atl. Rep.* 627; or on a theory contrary to that upon which the case was submitted to the jury. *Sensfelder* v. *Stokes,* 69 *N. J. L.* 86; 54 *Atl. Rep.* 517; *Cook* v. *American, &c., Gunpowder Co.,* 70 *N. J. L.* 65; 56 *Atl. Rep.* 114; *Queen* v. *Jennings,* 93 *N. J. L.* 353; 108 *Atl. Rep.* 379; or where the verdict plainly exhibits a compromise conclusion relative to the fundamental issue of liability. *Juliano* v. *Abeles, supra.* Where, in the consideration of conflicting testimony, the facts found by the jury will sustain the verdict, it should not be set aside merely because, in the opinion of the trial judge, the jury might have found otherwise. *Knickerbocker Ice Co.* v. *Anderson,* 31 *N. J. L.* 333; *Queen* v. *Jennings, supra; Bennett* v. *Busch,* 75 *Id.* 240, 244; 67 *Atl. Rep.* 188; *Finnegan* v. *The Goerke Co.,* 106 *N. J. L.* 59; 147 *Atl. Rep.* 442; or merely because the trial judge, if required to determine the facts, would have reached a different conclusion. *Faux* v.

*Willett,* 69 *N. J. L.* 52; 54 *Atl. Rep.* 520; *Bowell* v. *Public Service Corp.,* 77 *N. J. L.* 231, 232; 71 *Atl. Rep.* 119. The nullification of a verdict is not justified simply because the verdict appears to be discordant with the weight of the evidence. In *Cascone* v. *Hendrickson,* 8 *N. J. Mis. R.* 229; 149 *Atl. Rep.* 337, the author of the opinion (*per curiam*) was constrained to remark, "it seems to be necessary to repeatedly state that the verdict of a jury will not be set aside upon the ground that it is against the weight of the evidence, unless the verdict clearly evinces that it is the result of mistake, partiality, prejudice or passion." The mere fact that the award of damages is immoderate and excessive does not conclusively indicate that the verdict was the product of sympathy, passion or prejudice. *Gray* v. *Elmo,* 9 *N. J. Mis. R.* 1093, 1097; 156 *Atl. Rep.* 825; *Gee* v. *Moss,* 108 *N. J. L.* 160; 156 *Atl. Rep.* 458. It is, of course, a circumstance to be considered.

The following quotation taken from the opinion of Nevius, J., in the early case of *Somerville and Easton Railroad Co.* ads. *Doughty,* 22 *N. J. L.* 493, 497, is not only frequently pertinent but also expositive of the power of the court: "There is no evidence of any misbehavior on the part of the jury, or that they did not attentively listen to the testimony of witnesses and the arguments of counsel during a protracted trial; nor is there any proof of bias, or passion, or prejudice, in their minds, unless it is found in their verdict. This court has the power to set aside this verdict; but we will not exercise that power, unless we are clearly satisfied that it is wrong, exorbitant, and oppressive, and so much so as to strike the mind of every reasonable man, at once, that the jury, from some cause, have done the defendants gross injustice. We cannot exercise this power rudely because we may think the verdict too high; we cannot convert ourselves into a tribunal of fact; the law has not invested us with that power * * *."

It must always be apprehended that it is pre-eminently the mission of the jury to resolve the credibility of the testimony of the witnesses; to settle the facts and to determine

the inferences which ought to be logically and legitimately drawn from them. A verdict founded upon logical and legitimate inferences from facts supported by evidence is normally conclusive. *Smith* v. *Lorillard,* 67 *N. J. L.* 361; 51 *Atl. Rep.* 928.

Where it can be confidently inferred that a verdict has been fabricated by the influences of sympathy, or passion, or prejudice, or founded upon mistake, it must, of course, be annulled.

These rules which characterize the power to grant new trials are well established, yet with the assumption that the exercise of the power is basically discretionary, we, as trial judges, are constantly importuned to weigh the conflicting testimony with exactness and precision and in reality to substitute our judgment for that of the jury. The power is essentially remedial in character. Its exercise is not intended to supplant the appropriate function of the jury.

Acknowledging, then, the legitimate range of the review on an application for a new trial, the evidence introduced at the trial of these actions has been thoughtfully examined and critically considered.

Advancing northwardly on Old Delsea Drive a point of divergency is reached at Malaga where the more recently constructed highway locally known as New Delsea Drive branches off, curving northeasterly and the Old Delsea Drive extends directly onward. The automobile was moving northerly on Old Delsea Drive. The bus approached the junction of the highways on New Delsea Drive. The opportunity of each driver to observe the other approaching vehicle was somewhat restricted by neighboring buildings. Both drivers were acquainted with the conjunction of the highways. There was undoubtedly a violent collision between these two vehicles. It is inconceivable that this collision occurred in the absence of negligence. Broadly stated, the jury was called upon to fix the responsibility. The testimony in its cardinal particulars was discordant and conflicting and from it the jury was obliged to harvest the facts.

Everett Norbury, who was at the steering wheel of the auto-

mobile, has no remembrance of the circumstances accompanying and surrounding the occurrence of the mishap. The man employed to operate the bus was not driving it. The bus was being operated by Donald Healy, who was at the time returning home from college. Donald is the son of an officer of the defendant company and was evidently authorized to operate any of the defendant's buses whenever he desired. The jury presumably concluded that the bus approached and entered the junction of these highways at an excessive speed: that in undertaking to conveniently pursue the curve of the highway at an immoderate speed, the driver of the bus guided it to the left of the center of New Delsea Drive as it merges with the other highway at the south and that the collision occurred at the southerly point of division of Old Delsea Drive. Was there evidence which, if deemed credible, would adequately uphold such a conclusion?

The witness, Beatrice DeFeo, testified that the bus was proceeding "mighty fast." "It didn't slow down a bit;" Martin Bosco said the bus was moving "pretty fast." "I seen the bus run right into that car." In his opinion the bus was running at a speed of approximately fifty miles per hour; Laura May Lenderman stated the bus was traveling at "a terrific rate of speed;" Goldie VanOrden, a passenger in the bus, related that the bus driver was "speeding." She, Miss Lenderman, and the witness, Anna Bevis, estimated the speed of the bus to have been about sixty miles an hour. The witnesses, Wilkie, Lenderman, Bevis and the plaintiff James Fisher, all testified that the bus as it closely approached the automobile was in part to its left of the white center line of the intersecting highway over which it was being operated. Additionally, the witnesses, Briggs and Palmer, testified that after the occurrence of the collision they discovered fragments of glass on the highway, some of which were east of the center line. The witnesses, DeFeo, Bananno and Briggs, speak of the "loud crash," "tremendous crash." A photograph portraying the condition of the automobile after the collision is also informative of the probable violence of the collision. Moreover, there was testimony indicating that in

the collision the front bumper of the bus was displaced, the left front head lamp and fender were damaged, the radiator was injured and the license plate attached to the front of the bus was detached. It is said that the front of the automobile was uninjured; its right front wheel was shattered; its motor broken from the bell housing and the right side near the front of the body was crushed. The distance and direction from the place of collision to the point where the vehicles ultimately rested were doubtless matters significantly regarded by the jury.

The bus driver, Donald Healy, avowed that the bus was moving at about twenty-five miles an hour as it approached the intersection. The vehicles were about one hundred and fifty or two hundred feet apart when he first saw the automobile. There were passengers in the bus who asserted that when they first saw the automobile it was two hundred or two hundred fifty feet distant. Six passengers of the bus estimated its speed as moderate and in their opinion about twenty-five miles per hour. There was testimony tending to disclose that the automobile was not moving rapidly as it came to the junction of the highways and that before the occurrence of the collision its speed was reduced and the illumination of the stop lights at the rear of the car was noticed. Yet, testimony was introduced on behalf of the defendant tending to reveal that the automobile was being operated at the rate of forty to fifty miles an hour. The witness, Van Hook, declared that the automobile seemed to "shoot out" in front of the bus and "pick up speed." Other testimony would conduce the impression that as the vehicles closely approached each other, the automobile veered to its left and the bus to its right and that the vehicles came into collision on the westerly side of the intersection, if not, on the westerly shoulder of Old Delsea Drive.

Sufficient of the evidence has been recited to exhibit its divergent and contradictory state. It was the province of the jury to appraise the testimony of the several witnesses and to determine in which direction the weight of the evidence inclined. Their conviction that the driver of the bus

was negligent is substantiated by confirmatory evidence and is not so manifestly discordant with the weight of the evidence as to denote the pressure of sympathy, passion or prejudice in the determination of that issue.

There was evidence of circumstances from which contributory negligence on the part of Everett Norbury could have been logically and plausibly inferred. Indeed, a verdict ascribing the occurrence of this collision to the concurrent and co-operating negligence of both drivers would be more defensible. However, the attention of the jury was particularly focalized by counsel for the defendant and by the trial judge on the conduct of Everett Norbury in the management and operation of the automobile. The circumstances were, of course, productive of a variety of inferences. Where the question of contributory negligence depends upon the conclusion to be reached from a variety of circumstances considered in their relation to and their reaction upon each other, the jury and not the court is normally the tribunal to draw such conclusion. *Mayes* v. *Splitdorf Electrical Co.*, 94 *N. J. L.* 460; 111 *Atl. Rep.* 10; *Rochford* v. *Stankewicz*, 108 *N. J. L.* 265; 158 *Atl. Rep.* 386. The jury resolved that Everett was not guilty of any negligence proximately contributing to the happening of this mishap. Perhaps the jurors accredited the statements that Everett was driving slowly and that the bus approached at a speed which in the existing conditions, would not be reasonably anticipated. Peradventure, the jurors believed that in approaching the highway intersection, Everett made an observation, encompassing a distance on New Delsea Drive within which a vehicle moving at a reasonable rate of speed could have been seen. *Newark Passenger Railway Co.* v. *Block*, 55 *N. J. L.* 605; 27 *Atl. Rep.* 1067; *Rochford* v. *Stankewicz, supra; Danner* v. *Kennedy*, 111 *N. J. L.* 328, 332; 168 *Atl. Rep.* 445; *Miller* v. *Public Service Co-ordinated Transport*, 111 *N. J. L.* 339, 342; 168 *Atl. Rep.* 409. Possibly the jurors determined that the only causative factors of the collision were the excessive speed and the course taken by the bus as it came around the curve. Although a dissentient view on this point is

entertained by the court, nevertheless the conclusion of the jury must be accorded its due and proper recognition, if our dual system in the administration of justice is to be logically and consistently supported. Recognizing, then, the limitation of the judicial prerogative, the decision of the jury determinative of these issues ought not to be set aside.

Then also, it is averred, that the awards of damages to the administratrix, to James H. Fisher and to Mary Norbury are immoderate and excessive. The evidence relating to the injuries and losses for which compensatory damages were allowed has been thoughtfully and deliberately considered in each of these cases. A specific recitation of such evidence need not be here undertaken. The jury awarded $10,000 to the administratrix *ad prosequendum*. The decedent Joel W. Rose was sixty-nine years and five months of age at the time of his death. His annual salary and allowances from the Methodist Conference amounted in the aggregate to $1,450. These earnings were augmented in some inconsiderable amount by donations for his services at marriages and funerals. He was privileged to occupy a parsonage at a saving of approximately $300 a year. In season he received some contributions of an esculent nature from his grateful parishioners. At the age of sixty-nine the expectancy of life is a little less than nine years. Necessarily assuming that Mr. Rose required some part of his earnings for his own maintenance and personal requirements, it becomes at once apparent that the award in this case cannot be consistently justified. His widow was fifty-nine years of age. A grandson four years of age was a member of his household. He made a small monetary contribution annually to his son. It is elementary that in such an action the plaintiff is entitled to a capital fund which represents the present value of all the pecuniary loss which will fall upon the widow and next of kin by reason of the premature death of the intestate. Granting that the jury in such actions must pattern their estimate of damages largely on conjectures and probabilities, yet, the award in this case plainly exceeds the present worth of the pecuniary injury forecast by the evidence. It evolved from sympathy.

If the plaintiff will consent to accept $5,650 the rule will be discharged; otherwise it will be made absolute.

The jury awarded $15,000 to James H. Fisher, a boy seventeen years of age. He was very severely injured. A precise account of his bodily injuries, their nature, extent and degree of severity would needlessly lengthen this memorandum. The damages awarded to him, although abundant, cannot be adjudged, in the light of the evidence, to be so manifestly excessive as to be indicative of the influences of sympathy, passion, partiality or prejudice.

"A new trial may be had for excessive damages, but in that case the damages ought not to be weighed in a nice balance, but must be such as appear at first blush to be outrageous and indicate passion or partiality in the jury." 2 *Tidd Prac.* 909.

The allowance of damages to this plaintiff may well be taken to be expressive of the honest and impartial judgment of the jury. The rule to show cause is discharged.

There remains to be considered the verdict awarding damages of $15,000 to Mary Norbury. She suffered a rather severe concussion of the brain, a fracture of the ascending ramus, a fracture of the right femur, a compound fracture of the ulna of her left forearm,' lacerations of the forehead and right knee. She undoubtedly received a very severe shock which has materially disordered her nervous system. Her vision has been somewhat impaired. The fracture of the femur has resulted in a slight shortening of the right limb. The fracture of the ulna has failed to heal. Some surgical operation will be necessary to reduce and unite this fracture. She was detained in the hospital for a period of eight weeks. She still suffers pain in her back. The fractures of the pelvis and femur have healed. This plaintiff is a young girl whose appearance disclosed the effect of the disastrous ordeal through which she had passed. Here again the jury undoubtedly yielded in some degree to sympathy.

If this plaintiff will consent to accept $10,000 in lieu of the damages awarded by the jury, the rule will be discharged; otherwise it will be made absolute.

The plaintiffs, whose awards have been deemed excessive, may be accorded a period of twenty days after the entry of the rule in conformity with these conclusions within which to signify, in appropriate form, their acceptance of the damages as here reduced.