The plaintiff brought suit against the defendant to recover damages for personal injuries and property damage as a result of a collision between an automobile owned and operated by the plaintiff and one owned and operated by the defendant. A counter-claim was filed by the defendant for personal injuries and property damage. The collision occurred near the intersection of Ocean Avenue and Marine Place in Deal, New Jersey, on September 1, 1944. The jury returned a verdict of "No Cause for Action" in favor of the defendant and against the plaintiff, and awarded the defendant on his counter-claim against the plaintiff the sum of $1,574.50.
The application for a new trial is based upon "the ground that the verdict was against the weight of the credible evidence." The transcript of the testimony, furnished on the Rule to Show Cause, contains the testimony of only five of the sixteen witnesses who were called to testify in the case. The collision between the two automobiles was severe in character, resulting in the death of one person and injury to all the occupants of the two automobiles. The collision *Page 566 
occurred at half past five o'clock in the afternoon. When the plaintiff, who was driving his automobile, was taken to the hospital after the collision, he was examined by Dr. Binder, who testified that he found that the plaintiff was under the influence of intoxicating liquor and was unfit to operate the automobile. (P-87) The doctor further testified, (P-84) "that the plaintiff's test was positive, which means that he had no co-ordination."
The plaintiff's testimony as to the occurrence was to the effect that he was driving in a southerly direction and that "the weather was drizzling and wet" (P-2); that it was on a Friday before Labor Day; that he was approaching the intersection of Marine Place and Ocean Avenue in the Borough of Deal; that cars were passing on his right side; that he was driving about five or six feet west of the center line of the road; that he saw the defendant's car coming north about two hundred or two hundred and fifty feet away and that the defendant's car was straddling the white line. The plaintiff further testified that the defendant's automobile was swerving (P-4). When asked in what way it was swerving, the plaintiff answered, (P-5) "to the ____ I don't know; to the west side." When first interrogated about the speed of the defendant's automobile, he said he didn't know, and then later testified it was going pretty fast. He also testified that when the defendant's automobile was approaching (P-6) he, the plaintiff, slowed down and in doing so the rear part of his car skidded four or five feet. When asked in what direction did it skid, he answered, "Well, it was facing half way east, about. About forty-five degrees or so." He said his automobile was not over the middle line of the street, but near it. After the skidding the plaintiff's automobile stopped, according to his testimony, and his automobile was on the west side of the middle of the highway when struck by the defendant's automobile. "After it was struck I did not know what happened for two or three days." (P-7)
The plaintiff's testimony was in conflict about other automobiles passing him immediately before the collision, when *Page 567 
compared with testimony given at a previous trial involving the same collision.
He further testified that when he saw the car coming, "I didn't have no chance to get to the other side of the road — I stopped — or slowed down. I didn't have a chance to get out of the way. I put on the brakes and stopped the car and as I did so the car skidded, and when it came to rest it was facing just about southeast." He said his car was stopped about five seconds before the collision.
When plaintiff was asked if he did not testify at the previous trial that his car skidded over to the east side of the road, and answered "Yes". His answer given to that question at the last trial was, "I don't quite remember." When asked, Did he deny that he had testified that the car went to the east side of the road, he answered: "No, I am not saying that I deny it, but I say that I don't quite remember."
The testimony of May T. Damon, on behalf of the defendant (P-55), said that she was riding in the back seat of the Schoonmaker automobile with Mrs. Schoonmaker, and that Mr. Schoonmaker was driving the automobile slowly; that he was on the right side of the road, and that before and at the time of the collision Schoonmaker was not driving on the left side of the road, "Never at any time"; that he was never straddling the white line. She said she was thrown sideways in the car and had two fractures of the pelvis and cuts about her forehead; that she did not lose consciousness. She further says that immediately after the collision she was lifted out of the automobile in which she was riding and placed in another. At that time she said the Schoonmaker automobile was near the east curb line of Ocean Avenue near the intersection of Marine Place. And the following question and answer was given: "Q. Where was the Sorenson car at that time Mrs. Damon? A. The Sorenson car was almost at right angles to Mr. Schoonmaker's Oldsmobile. Q. With reference to the front of Mr. Schoonmaker's, where was the other car? A. Almost at right angles. Q. And with reference to the front of Mr. Schoonmaker's car where was the other car? A. Why, the *Page 568 
front of Mr. Schoonmaker's and the side of Sorenson's car had collided. BY THE COURT: Well, were they together at the time you saw them? A. Yes." She said it was the right side of the Sorenson automobile that was in collision with the front of the Schoonmaker automobile.
This witness further testified that the Sorenson automobile was on the westerly side of the street, but that the front of the automobile was five or six feet to the east of the middle line, and the rear of the Sorenson automobile was near the white line. She further testified that the Sorenson automobile was several feet east of the white line.
The defendant and counter-claimant, Schoonmaker, testified that at the time of the occurrence he was driving in a northerly direction on the right side of the road; that he was driving slowly and as he came to the intersection of Marine Place he saw the plaintiff's automobile approaching about two hundred feet away; that the defendant was always on his right side of the road; when he was about to cross Marine Place a terrific crash occurred from an impact of a car, without any previous warning or signal, and that he became unconscious after the collision.
Exhibit P-3 showed the defendant Schoonmaker's automobile damaged in the front, including a broken windshield and front bumper.
Exhibit P-6 showed Sorenson's automobile damaged very badly on the right side of the middle, with the front and rear wheels on the right side extending outwards, and the middle badly broken, almost in two.
The defendant, when questioned, gave the following answers: "Q. And you were driving ahead, didn't you see what it was that you collided with? A. Whatever it was was not in front of me. It came from my left." He further said that the road was clear before him as he was driving north. To justify a Court in setting aside a verdict it must be so clearly against the weight of the evidence that it was the result of mistake, passion or prejudice.Floersch v. Donnell, 82 N.J.L. 357; Queen v. Jennings,93 N.J.L. 353; Lembeck v. Harms, 98 N.J.L. 95. *Page 569 
In the case under consideration the Court determines that the jury was fully justified in deciding that the plaintiff had no cause of action. Evidently the automobiles were almost in the same position after the collision as when the collision occurred. The damaged parts of the automobiles and the position of the automobiles after the collision clearly indicated that the plaintiff made a left hand turn in the way of on-coming traffic. The verdict was not the result of passion, prejudice or mistake.
The jury returned a verdict for the defendant on his counter-claim in the sum of $1,574.50, which was the amount agreed upon as the money loss and expenditures incurred by the defendant. Evidently, the jury made no allowance for pain and suffering. The testimony adduced by the plaintiff gave little information about the extent of the injuries, as the defendant continued his business, and did not complain of any extensive injuries. Not having furnished substantial testimony upon which an allowance could be made, the jury were warranted in not making an allowance for this item. In any event, their determination would not, under all the testimony, indicate that it was due to passion, prejudice or sympathy, and certainly not prejudicial to the plaintiff.
The defendant has made no motion to set aside the verdict on the counter-claim. Under all the circumstances and testimony in this case there appears no ground upon which the plaintiff can rely for setting aside the verdict on the counter-claim. In the case of Banks v. Uhland, 33 Atl. Rep.2d, 707, a verdict of no cause for action was not inconsistent and did not entitle plaintiff to a new trial on the ground that no verdict was rendered with regard to defendant's counter-claim, where the counter-claim was withdrawn at the close of the evidence and during argument to jury, and the pleadings containing the counter-claim were not delivered to the jury and no reference thereto was made in the charge. In the case mentioned, the court also held:
"Further, the failure to award an affirmative verdict upon the counterclaim, even if submitted to the jury, could not have been complained of by the plaintiffs." *Page 570 
In Bennett v. Eagleke, et als., 148 Atl. Rep. 197, it was held that:
"Because the verdicts are inconsistent, in that they are against the owner of the car only and not against the driver, and the owner became liable only by negligence of the driver, imputable to him as the master. This is not a ground for setting aside the verdicts against the owner and master."
In Sharabba v. McGuire et als., 144 Atl. Rep. 327, it was held that because no verdict was rendered for or against the driver of the milk truck injuring a boy, did not require the verdict against the owner thereof to be set aside. See also,Lippincott Bros., Inc., v. Matazzo, 150 Atl. Rep. 216. It is evident from the decisions above cited, as well as others reported, that in order for an application for a new trial to be granted under the circumstances existing in this case, the greater weight of evidence should disclose that the verdict should be set aside or that the verdict found was the result of passion and prejudice. The testimony in this case is to the contrary. The Rule to Show Cause is discharged.
It should be borne in mind that the plaintiff has not presented a complete transcript of the record and testimony in this cause.