REGINALD S. BENNETT v. ALFRED BUSCH.

Argued February 27, 1907—Decided June 10, 1907.

1. The defendant, while on a business trip in an automobile, made his headquarters at a hotel, the automobile being kept in a garage several blocks away. On the evening of the accident, on arriving at the hotel, the defendant, after telling his chauffeur that he was going out in the machine that night, directed him to go down stairs in the hotel and get oil. Instead of obeying this instruction literally, the chauffeur drove the automobile to the garage for the oil, and while on his way there the collision occurred. *Held*, that whether the chauffeur was acting within the general scope of his authority was properly submitted to the jury, although in this particular instance the use of the machine was in disobedience of the literal instruction of the master.

2. Where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury.

3. In a conflict of testimony, when the facts found by the jury will sustain the verdict, the court will not set it aside, although in their opinion the jury might, upon the evidence, have found otherwise.

On rule to show cause.

Before Justices GARRISON, SWAYZE and TRENCHARD.

For the plaintiff, *Edmund Wilson*.

For the defendant, *Lindabury, Depue & Faulks*.

The opinion of the court was delivered by

TRENCHARD, J. This action was brought by the plaintiff, Reginald S. Bennett, against the defendant, Alfred Busch, to recover compensation for personal injuries sustained by the plaintiff and damage done to his horse and carriage in a collision which occurred between the plaintiff's carriage and an automobile alleged to have been in the control of a servant of the defendant.

The trial resulted in a verdict in favor of the plaintiff for $1,292.

The defendant was allowed a rule to show cause why this verdict should not be set aside and a new trial granted.

The collision which gave rise to the suit occurred at Asbury Park, in this state, on the evening of June 29th, 1905. The defendant was not in the automobile at the time of the collision, but it is contended by the plaintiff that the person operating it was the servant of the defendant for whose negligence the latter is responsible.

It is conceded by the defendant that the jury was warranted in finding that the collision resulted because of the negligence of the driver of the automobile. But it is insisted that the defendant is not liable for that negligence and that the trial judge should have directed a verdict for him for the reasons, among others, *first,* that defendant was not the owner of the automobile and the driver thereof was not his servant, and *second,* that assuming the driver to have been the servant of the defendant, the latter is not liable, because the driver had not been entrusted with the operation of the automobile on the occasion when the collision occurred and was not acting within the scope of his employment.

We think the motion for a direction of a verdict for the defendant was properly denied for these reasons:

*First.* The evidence as to the ownership of the automobile and as to the relationship of master and servant between the defendant and the driver was conflicting.

On behalf of the plaintiff there was evidence tending to show that the defendant was the owner of the machine and that the driver was his servant. There was evidence of a conversation between the plaintiff and the defendant immediately after the accident, and, while talking about a settlement, in which the defendant said: "My machine is injured probably quite as much as your wagon," and the plaintiff replied, "Then this is your machine, and this man was running it for you when this accident occurred?" To this the defendant answered, "Yes." There was also in evidence declarations of similar import made at the magistrate's office and elsewhere,

and other testimony which need not be recited at length, all tending to show ownership in the defendant and that the driver was his servant. The defendant's denial, which there was evidence supporting, was, in substance, as follows: That the automobile was the property of the Anheuser Busch Brewing Association, loaned to the Busch Bottling Company for the use of its treasurer and manager, the defendant in this case, and that the chauffeur was the employe of the Busch Bottling Company.

The most that can be said for the defendant is that there was a conflict in the proofs.

*Second.* Assuming that the automobile which caused the accident was the property of the defendant and was driven at the time by his servant, it seems clear that there was evidence tending to show that the servant was acting at the time within the scope of his authority.

The defendant testifies in effect that he was engaged at this time in a business trip to the towns of the Jersey coast. During that week he made his headquarters at the Marlborough Hotel at Asbury Park, and the automobile was kept in a garage several blocks from the hotel. On the day of the accident, and before its occurrence, the defendant had been pursuing his business in the neighborhood. With him, as usual, was his chauffeur, Alfred Harse, who was employed to "take care of the machine and keep it in order," and was accustomed to "bring the machine from the garage to the hotel in the morning." At six o'clock in the evening they returned to the hotel in the automobile. The defendant, after telling Harse that he was going out again that night, directed him "to go inside and get his dinner," and went in to get his own dinner, leaving the machine in front of the hotel. Harse, on leaving the dining-room, informed the defendant, who was still at dinner, that oil was needed for the lamps of the automobile and was told by him "to go downstairs in the hotel and get it." Instead of obeying this instruction the chauffeur drove the automobile to the garage for the oil, and while on his way there the collision occurred.

From this recital of facts it seems clear that, although the

chauffeur in this particular instance made a use of the master's machine in apparent disobedience of the latter's instructions, he was, nevertheless, engaged in the furtherance of his master's business, and the inference is legitimate at least that he was acting within the general scope of his authority, which was to care for the machine and keep it in order and to drive it on occasions. The law requires that after dark lights shall be displayed, and a failure to observe this rule would subject not only the defendant but also the driver to arrest. The testimony of Harse is significant. On cross-examination he says that, besides taking the machine to and from the garage, it was a part of his duty to keep it supplied with oil, and that he "thought a chauffeur that was drawing $20 a week salary was competent to go and get some kerosene at the garage." It is easy to understand how a master might order certain classes of servants to perform an act and expect exact obedience. But in directing a man of the intelligence and responsibility of Harse about such a trifling matter, it was in all probability in the nature of a suggestion merely. The master's purpose was to get the oil, and there is a legitimate inference that the servant was justified in going to the garage for the purpose.

In *Holler* v. *Ross,* 39 *Vroom* 324, Mr. Justice Fort, speaking for the Court of Errors and Appeals, said: "The Supreme Court of Connecticut states the rule applicable to this class of cases about as clearly as it can be done when it says: 'For all acts done by a servant in obedience to the express orders or direction of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the service required, the instructions given and the circumstances under which the act is done, the master is responsible, for acts which are not within these conditions the servant alone is responsible.' *Stone* v. *Hill,* 45 *Conn.* 47."

The rule, which is exactly applicable to the present case, was stated by Mr. Justice Lippincott in the Court of Errors and Appeals in *McCann* v. *Consolidated Traction Co.,* 30 *Vroom* 481. He says: "The general rule is a clear one, that

the master is liable for any act of his servant done within the scope of his employment, and if a servant is acting in the execution of his master's orders, and by his negligence causes injury to a third party, the master will be responsible. although the servant's act was not necessary for the preper performance of his duty to his master or was even contrary to his master's orders."

As already pointed out, whether the act of the driver was within the scope of his employment and in the execution of his master's orders, was a matter of doubtful inference.

The rule which controlled the action of the trial judge on the motion to direct a verdict was this: That, where fair-minded men might honestly differ as to the conclusions to be drawn from facts, whether controverted or uncontroverted, the question at issue should go to the jury. *Pennsylvania Railroad Co.* v. *Matthews,* 7 *Vroom* 531; *Delaware, Lackawanna and Western Railroad Co.* v. *Shelton,* 26 *Id.* 342; *Newark Passenger Railway Co.* v. *Block, Id.* 605; *Traction Company* v. *Scott,* 29 *Id.* 682; *Nolan* v. *Bridgeton and Millville Traction Co.,* 45 *Id.* 559.

Applying the rule stated a jury question was raised as to the negligence of the defendant.

We think, therefore, the case was properly submitted to the jury.

We, of course, must assume that the jury found these doubtful matters of fact in favor of the plaintiff.

In a conflict of testimony, when the facts found by the jury will sustain the verdict, the court will not set it aside, although, in their opinion, the jury might, upon the evidence, have found otherwise. *Knickerbocker Ice Co.* v. *Anderson,* 2 *Vroom* 333; *Taylor* v. *Vanderveer,* 4 *Harr.* 22.

Other reasons assigned for reversal have been examined, but we find no cause for disturbing this verdict, and the rule to show cause will be discharged, with costs.