[No. 8110.]

## WARD V. TELLER RESERVOIR AND IRRIGATION COMPANY.

1. NEGLIGENCS—*Examples.* One operating an auto car sees a street car standing to receive passengers. He fails to check his speed until too late to avoid injury to one attempting to board the street car. He might have stopped his car upon first view of the street car. *Held* a clear case of negligence on the part of the chauffer. (48.)

2. MASTER AND SERVANT.—*Master's Liability for Misconduct of Servant.* Whether a servant whose misconduct occasions injury to a third person, was, at the time, acting within the scope of his employment, is to be determined by a consideration of the attending facts and circumstances. The question is, Was he at the time acting within the express or implied authority conferred upon him, considering the nature of the service required of him, the instructions which he received, and the circumstances under which the act complained of occurred. (48, 49.)

The question is generally one for the jury. (51.)

3. —— *Chauffer Operating an Auto Car—Presumptions.* When a chauffer who has general control of his master's car is operating it in the usual manner, and in such usual operation occasions injury to one upon the public highway, a *prima facie* case that he was acting within the scope of his employment is established; and the burden is upon the master to overthrow this presumption. (53, 54.)

The evidence examined and held sufficient to charge the master.

4. EVIDENCE—*Compentency—Discrediting Witness.* A witness for defendant being cross-examined as to statements imputed to him as made shortly after an accident, attributed to his negligence, professed a want of recollection. The statement so imputed to him tended to impeach his testimony. *Held* that plaintiff was entitled to show that in fact the witness has made such statements. (57.)

5. APPEAL AND ERROR—*Where the Writ of Error Lies.* Where, after a verdict for the plaintiff, a new trial is improperly granted plaintiff may have a writ of error. (58.)

6. —— *What May be Assigned for Error.* Incompetent testimony introduced by the plaintiff in error is not assignable as error. (49-51.)

7. —— *Judgment.* Where, after verdict for the plaintiff upon sufficient competent testimony and proper instruction, a new trial is improperly granted—the Court of Review, reversing the judgment awarded new trial. (59.)

*Error to Pueblo District Court.* Hon. C. S. ESSEX, Judge.

Mr. M. J. GALLIGAN, for plaintiff in error.

Messrs. GOUDY, TWITCHELL & BURKHARDT, and Mr. E. P. STEINHAUER, for defendant in error.

SCOTT, J., delivered the opinion of the court.

The automobile of the defendant company, driven by its chauffer, ran down and injured the plaintiff, who was at the time attempting to board a street car that had stopped at the usual place, for the purpose of discharging and receiving passengers.

The chauffer testifies that he came up from behind the car, proceeding at the rate of eight to ten miles an hour; that he saw the car standing at the place where the accident occurred, when he was on the opposite side of the street which he afterward crossed; did not slacken his speed, nor make an attempt to do so until within fifteen feet of the plaintiff, when he applied the brakes, but too late to prevent the injury. When he first saw the car standing, he could easily have stopped his machine and thus avoided the accident. The plaintiff had stepped from the curb of the sidewalk, was just behind and waiting the action of a lady who was also attempting to board the car. The action of the chauffer under his own testimony was clearly negligent. The plaintiff did not see or hear the automobile approaching. The injuries were dangerous and permanent.

Upon the trial of the cause a verdict was returned for the plaintiff in the sum of five thousand dollars.

Upon motion of the defendant, a new trial was granted, whereupon plaintiff's counsel announced to the court that he had made as strong a case as was possible under the state of

facts; that he elected to stand upon the case as made, and would pray a review by the supreme court.

The only serious question presented, is as to the liability of the defendant for the negligent conduct of its chauffer, the contention being, that at the time of the accident the chauffer was acting without the scope of his authority.

The rule that an employer is not bound to respond in damages for the negligent acts of his servant unless such acts were done by the servant while acting within the scope of his authority, is well settled. But the difficult question to determine in such cases is whether the particular act or omission of the servant causing the injury for which the master is sought to be held liable, was committed within the scope of the servant's employment. This can be determined by no rigid rule but rather from the surrounding facts and circumstances of the particular case.

What was in the mind of the court in this case, and his reasons for granting the motion for a new trial will be found in his statement made at the time, as follows:

"The court has no doubt about the correctness of the contention of the defendant, the Teller Reservoir Company, in this case. The court would like very much if it could have seen its way clear, to have sustained this verdict. It crept out in the trial that the insurance company was behind the Teller Reservoir Company, and that hence the Reservoir Company would have had no part of the judgment to pay if it had been rendered against it; and I have not much doubt but what that fact influenced the jury largely. But the proposition that the chauffer at the time of the occurrence of this accident was acting in direct opposition to express instructions, that he was using the automobile contrary to his rights, contrary to his authority, that he was in no manner performing the duties of the defendant, the Teller Reservoir Company, and was not acting within the line of his duty, and was not acting within the scope of his

authority, is beyond all dispute. The entire evidence uncontradicted goes to that effect.

"The court in the first instance attempted to save the case to the plaintiff by overruling a demurrer to the evidence at the close of the plaintiff's case, and I believe that if the case had stood there as it was, then perhaps the court might have been sustained, but when the defense came in and all of the evidence uncontradicted went to establish the fact that the chauffer practically stole the machine out of the garage, at least took it without any right, as testified to by himself, the garage man and all the other witnesses, it left the case standing undisputed that upon doing so he was not in the discharge of his duty or in the line of his duty, and to let this verdict stand would be contrary to both the law and the evidence as I view it."

In this statement there is obvious error as it relates to the question of the suggestion of casualty insurance. If there was error in this respect it was not error caused by the plaintiff.

This matter was brought to the attention of the jury by John C. Teller, president of the defendant company, the principal owner of its stock, and in general charge of its business. And this upon direct examination by defendant's counsel, without however, any suggestion from such counsel as to the question of insurance. This testimony was as follows:

Q. "At the time of your conversation with Mr. Palmer had suit been brought against you personally? A. I would not be positive, I think it had, I had been trying to call him by phone and tell him that I was not the proper one to bring suit against, it would have to be the insurance company." And further:

Q. "And he was paid by the company during all times?" This referred to the chauffer. The answer to this question was as follows: A. "He got his pay every month while in the company's employ. I asked my son to see Mr.

Ward and find out if we could pay his doctor bill or some other expense, which he told me afterward he had done, and we wrote a letter to the company, I wrote a letter to the company asking the company to reimburse Mr. Ward at least for his physician and his expense at the hospital, and wrote the insurance company to that effect."

Certainly the plaintiff was in no way responsible for this testimony and it should not be charged as an error against him. A party litigant cannot inject error into a trial and then take advantage of it.

It is true that after the foregoing testimony was given, counsel for plaintiff asked the witness, E. C. Teller, secretary of the defendant company, the following question:

Q. "At that time and place when you had a conversation with Mr. Ward, did or did you not say as follows: 'If you can get an adjustment of this matter, do so, because there is an insurance company back of it?'" Objection was made to this question and sustained.

Even though this question under the circumstances of the case be held to be improper, it was not material error, for the president of the defendant company had testified to the fact of insurance, and the mischief, if any, had been done before the question was asked.

The finding of the court that "the chauffer was at the time of the accident, in no manner performing the duties of the defendant company, and was not acting within the line of his duty or the scope of his authority, is beyond all doubt," is not justified by the testimony.

Beside, the question as to whether or not the chauffer was acting within the scope of his authority is generally one of fact for the jury under proper instructions, and not a question of law for the court. *Marshall v. Taylor*, 168 Mo. Ap. 240, 153 S. W. 527; *Burger v. Taxicab & Motor Co.*, 66 Wash. 676, 120 Pac. 579; *Bennett v. Busch*, 75 N. J. L. 240, 67 Atl. 188; *Sharp v. Lambert*, 142 Mo. Ap. 567, 121 S. W. 770; *Kneff v. Sanford* (Wash.), 115 Pac. 1040.

A very complete review of the authorities upon the question will be found in the case of *Richie v. Waller,* 63 Conn. 155, 28 Atl. 29, 27 L. R. A. 161, 38 Am. St. 36. The rule there adopted seems well fitted to the case at bar. The court said:

"Applying these principles to the case at bar, the question for the court below was whether or not Blackwell, for the time being, totally departed from the master's business and set out upon a separate journey and business of his own. If the rule of law were that any deviation by the servant 'to carry some business of his own into effect,' was of itself such a departure, the above question would be one of law. But this, as we have seen, is not the rule of law. To decide the question in a case like the present, the trier must take into account, not only the mere fact of deviation, but its extent and nature relatively to time and place and circumstances, and all the other detailed facts which form a part of and truly characterize the deviation, including often the real intent and purpose of the servant in making it. Without spending more time upon this point, we think the above question is one of fact in the ordinary sense, and that the case at bar clearly falls within the class of cases where such question is strictly one of fact to be decided by the trier."

We think it is very clear under the testimony in this case that fair minded men might reasonably differ as to whether or not the chauffer was at the time, acting within the scope of his employment; that is to say, was he in the driving and use of the automobile at the time, acting within the express or implied authority conferred upon him, considering the nature of the services required, the instructions given, and the circumstances under which the chauffer was acting.

Upon this point there are circumstances apparently in conflict with positive testimony in the case. In such cases

this court has in *Victor v. Smilanich*, 54 Colo. 479, stated the rule to be:

"It does not always follow that because positive testimony of a witness is not directly controverted, that a jury must treat such evidence as true. A witness may be contradicted by circumstances, as well as by statements of others contrary to his own. In such cases neither courts nor juries are bound to refrain from exercising their own judgment as to the probative value of his testimony.—30 Enc. 1068. * * * When circumstantial evidence is of a nature from which it can be reasonably inferred that it contradicts the direct and positive testimony of witnesses, it is the province of the jury to determine the weight to which such evidence is entitled. *United States v. Pacific Express Co.*, 15 Fed. 867. In many instances evidence to establish a fact is circumstantial. If it is of sufficient strength and force, considering the surrounding circumstances and conditions, to justify a reasonable and well-grounded inference, by reasonable men, that the fact in dispute is thus established, the question should be left to the jury to determine. *C. & F. Lumber Co. v. D. & R. G. Ry. Co.*, 17 Colo. App. 275, 68 Pac. 670; *Colo. Midland Ry. Co. v. Snider*, 38 Colo. 351, 88 Pac. 453."

It is undisputed that the automobile was owned by the defendant company; that it was used exclusively in the business of the company; that the chauffer was employed by the month, and that his sole duty was to drive, repair, and care for, the automobile. Upon this point the president of the defendant company testified:

"The automobile was owned by the company and used for the benefit of the company. I had the direction and control as to its use when I was here, and when I was not here, then my son, Edward Teller, gave orders what to be done. McKinney generally drove the car as an employe of the defendant. He was authorized and directed that whenever we wanted the car we called on him to get the car, and

he looked after it if it was broken, and any repairs necessary, he was to do that without even saying to us that it was to be done, unless it was something serious; clean it, wash it and repair it if necessary. It was kept in the Pueblo Automobile Company's garage."

Under this state of facts, it is the generally accepted rule that the plaintiff established a *prima facie* case that the chauffer was acting within the scope of his authority. The reason for the rule by courts so holding, is quite concisely stated in *Long v. Nute*, 123 Mo. App. 204, as follows:

"Where a servant, who is employed for the special purpose of operating an automobile for the master, is found operating it in the usual manner such machines are operated, the presumption naturally arises that he is running the machine in the master's service. If he is not so running it, this fact is peculiarly within the knowledge of the master, and the burden is on him to overthrow this presumption by evidence which the law presumes he is in possession of. It would be a hard rule, in such circumstances, to require the party complaining of the tortious acts of the servant, to show by positive proof that the servant was serving the master, and not himself, and the fact that the chauffer made a detour from the direct route from defendant's home to the fair grounds, does not change the presumption or relieve the master's liability for injuries caused by careless driving. (20 Am. and Eng. Enc. of Law, p. 166.) We think the instruction was a proper one in the circumstances shown by the evidence."

As supporting this doctrine see *Stewart v. Baruch*, 103 App. Div. 577, 93 N. Y. Supp. 161; Huddy on Automobiles (3d Ed.) §§ 268, 269; *Kneff v. Sanford*, 63 Wash. 503, 115 Pac. 1040; *Shamp v. Lambert*, 142 Mo. App. 567, 121 S. W. 770; *Vanneman v. Walker Laundry Co.*, 166 Mo. App. 685, 150 S. W. 1128; *Trout Auto. Co. v. People's Gaslight Co.*, 168 Ill. App. 56; *Bennett v. Busch*, 75 N. J. Law, 240, 67 Atl. 188; *Marshall v. Taylor*, 168 Mo. App. 240, 153 S. W.

527; *Burger v. Taxicab Motor Co.*, 66 Wash. 676, 120 Pac. 519; David's Law of Motor Vehicles, § 225.

Authorities are cited to the contrary but we think the above conclusion is sustained by the better reason and the greater weight of authority.

We are not to be understood as saying that such *prima facie* case is conclusive, for it is always subject to be overcome by evidence to the contrary. But it sufficiently raises the issue of fact, to be determined as any other issue of fact, upon all the surrounding facts and circumstances.

It is in law a presumption, and, presumptions are rules of convenience based upon experience or public policy, and established to facilitate the ascertainment of truth in the trial of causes. Except in the few instances of conclusive presumptions, one is not as a matter of law stronger or weaker than another. The whole case is then thrown open to be decided as a fact, upon all the evidence. It is for the sound judgment of the jury to weigh all the circumstance, including the characters of the persons involved and the probability of different lines of conduct, and determine where the truth lies as a matter of common sense unfettered by any arbitrary rule.

A careful consideration of all the testimony in the case does not disclose substantial basis for the conclusion of the court "that the chauffer practically stole the machine out of the garage," or "that in so doing he was not in the discharge of his duty, or in the line of his duty."

There is no testimony in the case to indicate that the chauffer did not take the machine from the garage as he had done for the purpose of use and repair, continuously, for the entire three years of his employment. It does not appear that during all that period he ever had a verbal or written order from his employer to the management of the garage, to permit the use or possession of the automobile. In fact, the president of the company testified to the contrary, for he says, "He was authorized and directed that

whenever we wanted the car, we called on him to get the car."

It will be seen that the defendant did not each time, nor at any time call on the garage company to let him have the car. It would be absurd in the light of human experience to so infer. There is nothing in the whole testimony to indicate that during the entire period of his employment, any other person whatsoever, either cared for, drove, handled or repaired the car. Indeed it seems to have been at all times in his exclusive charge, subject only to direction as to its use.

It is true that the president of the company testified that he instructed the chauffer not to use the car except upon orders from himself or his son, who was the secretary of the defendant company, and the chauffer corroborates this statement. But if the chauffer did violate this instruction, it constituted nothing more than a violation of instructions, and this alone cannot relieve the defendant. 26 Cyc. 1535.

It is the specific contention of the defendant that the chauffer was allowed the noon hour for his meals, and that upon this occasion, he took the automobile from the garage without permission, and started to go to his dinner, and that the accident occurred while so traveling from the garage to the chauffer's home; that under this state of facts the chauffer was acting without the scope of his authority.

But this contention as to fact rests on the chauffer's testimony, except that one of the keepers of the garage testifies that the chauffer so told him, and invited him to ride with him. This man was in the machine at the time of the accident.

The plaintiff was taken immediately after the accident to Dr. Campbell's office. On cross examination the chauffer's attention was called to a conversation alleged to have occurred at that time and place, and testified as follows:

Q. "In Dr. Campbell's office in the presence of Mr. Saxton and Mr. Huff, did you make this statement: 'I was

trying out the machine at the time of the injury to Mr. Ward, and I was going to run up the viaduct hill?' A. I don't remember, it has been so long.

"Q. And at that time and place did you not also make the statement in the presence of these two parties named, that you had just repaired the car, and you wanted to try it out? A. I don't remember, it has been quite a while and I don't just remember what I said.

"Q. If you made this statement immediately after, that would be the truth? A. I could not say as to that.

"Q. You would not at that time have made a misstatement wilfully? A. Not necessarily, but I was necessarily upset greatly over the accident, as anyone else would be.

"Q. At that time and place and in the presence of these gentlemen did you not say in answer to Mr. Palmer, in which he inquired, as follows: 'I suppose you were driving more rapidly than usual as it was about dinner time,' and did you not answer to that question by saying, 'I was not going to dinner, but was going to try out the car on the viaduct hill? A. I cannot remember the words.

"Q. Was that question put and answer made in substance at that time? A. I don't remember it."

Upon rebuttal the plaintiff placed the persons referred to, on the stand and endeavored to show that the chauffer did make the statements about which he was so questioned, at the time and place suggested in the questions to McKinney, the chauffer. The court excluded this testimony.

If McKinney did at that time say in the presence of these persons that he was not going to his dinner, but that he had just repaired the car and was trying it out, at the time of the accident, the testimony was competent, not as tending to prove the substantive charge, but as tending to impeach the testimony of the witness on the trial, to the effect that he was using the machine to go to his dinner, and it was error for the court to exclude it. The jury would

be justified on such a showing in discrediting the witness entirely.

If the chauffer was .in fact trying out the car after making the repairs, then he was plainly acting within the scope of his authority, as that authority was stated by the president of the company, and wherein the chauffer was given the authority to generally rely on his own judgment as to repairs. Indeed, the chauffer testified that it was his duty to try out the car after having made repairs.

It is admitted that the machine was not driven to the chauffer's home after the accident, nor at all, but was returned to the garage, and later in the afternoon driven to the defendant's reservoir.

The contention of the defendant must rest upon the question of the intent and purpose alone of the chauffer, at the time of the accident, as to whether the use of the automobile was within the line of employment. The question was one of fact and for the jury alone to determine.

We have not entered into a discussion of the question of deviation from the line of employment for the reason that it does not seem to be necessarily involved. This question is quite fully considered by our court of appeals in the case of *Gibson v. Dupree,* 26 Col. Ap. 324, 144 Pac. 1138.

The defendant in error contends that the right to review in this case does not exist, and cites *Monteith v. U. P. D. & R. G. Co.,* 13 Colo. App. 421, 58 Pac. 338.

We think that the right to review under the circumstances of the case is fully supported by *Wadsworth v. U. P. Ry. Co.,* 18 Colo. 600, 33 Pac. 515, 23 L. R. A. 812, 36 Am. St. 309. The plaintiff here declared that he could make no better case, and that he elected to stand by his case as already made. Under this statement, and with the views of the court as announced, a new trial would have been a useless and expensive proceeding, for it could produce only the same result, and as was well said in the Wadsworth case:

"The bringing of the whole record to this court for re-

view, including the bill of exceptions containing 'all the testimony offered, given or received on the trial,' clearly indicates that the intention of the parties was to treat the action of the court as though the court had dismissed the action or granted a nonsuit on the ground that plaintiff had failed to 'prove a sufficient case for the jury.' That such was the understanding and intention of plaintiff as well as the defendant, is confirmed by the fact that the assignments of error and argument of counsel in this court extend to the conclusions of the trial court upon the evidence, the pleadings, and the statutes upon which the action is founded.

"The code of civil procedure contemplates that the substance and not the mere form of judicial proceedings shall be regarded in determining the rights of parties. Hence, we shall review this cause according to the intention of the parties, as above stated, since it is obvious that the ends of justice will be thereby accomplished."

The judgment is reversed with instruction to try the caues in conformity with the views herein expressed.

*En banc.*

TELLER, J., not participating.

Decided May 3, A. D. 1915. Rehearing granted June 7, A. D. 1915. Judgment *en banc,* Nov. 1, A. D. 1915.