No. 15,184.

MOONEY *v.* CARTER.
(160 P. [2d] 390)

Decided June 11, 1945.   Rehearing denied July 2, 1945.

Mr. CLARENCE L. IRELAND, for plaintiff in error.

Mr. WILLIAM E. HUTTON, Mr. BRUCE B. McCAY, for defendant in error.

*En Banc.*

MR. JUSTICE STONE delivered the opinion of the court.

ON October 19, 1939, plaintiff in error, who was plaintiff below, was engaged as special policeman, without uniform, at Cheesman Park in Denver, which had been closed to automobile traffic by the police department on account of the summer opera. He had been stationed at the corner of Ninth avenue and Humboldt street and pursuant to instructions from his superior had put a barricade across the south half of Ninth avenue and in the center of the street the ordinary type of sign bearing the words "Street Closed," on a stand about thirty to thirty-five inches high. He had placed no barricade across the north side of the street because of instructions to let cars pass which were on their way to or from a large apartment house garage to which that street gave access. At about five o'clock in the afternoon defendant drove south on Humboldt street with

her little boy beside her in a baby chair attached to the front seat of her coach automobile and made a left-hand turn east on Ninth avenue for the purpose of driving through the park. Although she admits seeing the barricade which was on the side of the street she should travel, she did not stop, but continued past the barricade easterly along Ninth avenue. Plaintiff, who stood at the northeast intersection corner, attempted to stop her, and when she did not stop he ran to her car and climbed on the running board for the purpose of telling her that cars were not permitted in the park. She thereupon suddenly speeded up and swerved the car, throwing him off and causing him serious injuries. As a result, he brought action, charging assault and seeking damages for his injuries. Upon trial in the district court verdict was returned in his favor and judgment entered thereon. Defendant filed motion to vacate the judgment and for new trial, which was granted, and plaintiff has brought the matter here for review, asking that the verdict of the jury be reinstated together with the favorable judgment thereon.

The first question to be determined is whether, as urged by defendant in error, the order granting the new trial below was a matter within the discretion of the trial court. The motion therefor was based on the grounds that the evidence was not sufficient to support the verdict; that the verdict was against the evidence and the weight of the evidence; contributory negligence; error in refusing instructions; and insufficiency of plaintiff's complaint. At the time this motion was sustained, upon request of plaintiff and with the consent of defendant, the court ordered that plaintiff have ten days within which to elect whether to accede to a new trial or have review by this court, and plaintiff elected to stand on his case as made.

We do not know upon what ground the court granted the new trial. If based upon any other ground than that of the sufficiency or weight of the evidence,

it was not discretionary, and the correctness of the ruling is subject to review. If based upon the weight of the evidence, it ordinarily is within the discretion of the trial court and is not subject to review except where the evidence palpably supports the verdict and there has been a clear abuse of discretion: "Where the ground of the application is insufficiency of the evidence to support the verdict; that the verdict is against the weight of the evidence; that it is unjust and inequitable, and the like—a reasonable degree of discretion exists to allow or deny a new trial; and, when the questions involved in the application are close, the ruling of the court should not be interfered with. On the other hand, if the ground of the motion relied on does not in fact exist, or does not constitute a legal ground for a new trial, or the necessity for the application is the result of the applicant's negligence, the motion should be denied or the ruling held to be erroneous." *Clifford v. Denver, S. P. & P. R. Co.,* 12 Colo. 125, 129 (20 Pac. 333). See, also, *Hurt v. Nelson,* 85 Colo. 471, 276 Pac. 982; *Crosby v. Canino,* 89 Colo. 434, 3 P. (2d) 792. "* * * such discretion is applicable to those cases only where the trial court has reasons peculiarly within its knowledge justifying the conclusion that the ends of justice will be served by submitting the case to another jury." *Potter v. Great Northern Ry. Co.,* 167 Minn. 168, 208 N.W. 641.

The reasons for such rule are plain. First, that the trial court, from seeing and hearing the witnesses, may have formed such a doubt as to the credibility of the testimony, or entertain such an impression from the surrounding circumstances and atmosphere of the trial, as to conclude that a fair and impartial trial was not had; and second, that the exercise of such power is not an invasion of the jury's function to decide the facts, for upon granting a new trial the questions of fact will again be submitted to a jury for decision.

In the case at bar, however, the second reason does not apply. If the judgment of the court below is

sustained, there will be no retrial to a jury; plaintiff who asked for and received the favorable verdict of a jury will be compelled to accept in its stead the unfavorable judgment of the court. As was said by the court in *Henrickson v. Smith,* 111 Wash. 82, 189 Pac. 550: "* * * a litigant has the absolute right to have disputed questions of fact submitted to the determination of a jury. The appellate court, as well as the trial court, has power to see that such questions are properly submitted to the jury, and it is within the power of the trial court to set aside a verdict which he is convinced is contrary to the evidence and submit the disputed question to another jury. But this is the limit of the power. Judges of courts, cannot, without violating the fundamental law, substitute their opinions on disputed questions of fact for the opinion of juries, and enter judgments contrary to verdicts of such juries."

This court long ago, in *Wadsworth v. Union Pacific Ry. Co.,* 18 Colo. 600, 33 Pac. 515, held that in such case as at bar the bringing of the whole record to this court for review, including the bill of exceptions containing all the testimony offered on the trial, clearly indicates that the intention of the parties was to treat the action of the trial court as though the court had dismissed the action or granted a nonsuit on the ground that plaintiff had failed to prove a sufficient case for the jury. Hence the court reviewed the cause according to the intention of the parties. In *Ward v. Teller Res. & Irr. Co.,* 60 Colo. 47, 153 Pac. 219, we followed the rule announced in the Wadsworth case, and again affirmed it in *Warshauer Co. v. Rio Grande State Bank,* 81 Colo. 463, 256 Pac. 21. In the latter, two actions were brought below, one in conversion and the other in replevin. Verdicts for plaintiff were returned in both actions. Upon motions for new trial, both verdicts were set aside without reasons given. Upon election by plaintiff to stand by the cases as made they were dismissed. On error brought, the two cases were consid-

ered together and we found that the evidence was conflicting but that there was ample to support the verdicts returned; therefore, the judgments below were reversed with instructions to overrule the motion for new trial and enter judgment in favor of plaintiff on the verdict in each case. Following, then, this well established rule, if there is substantial, though conflicting, evidence in the case at bar upon which the jury found in favor of plaintiff, this evidence must be considered in the light most favorable to plaintiff and in support of the verdict rather than in support of the final judgment below.

In support of that judgment, it is urged that defendant's actions did not constitute an assault. Plaintiff was engaged in the performance of his duty at a place where he had a right to be. He was an officer with several years' experience. While defendant testified that she did not hear him utter any words before he caught up with her car, yet she saw him looking at her as she passed the barricade and she admits in her answer that, "Plaintiff yelled something," and plaintiff testified that he then raised his hand and told her that cars were not allowed in the park. When defendant failed to stop at his request, he stepped on the running board and there is no dispute by defendant that plaintiff then addressed her and there can be no question but that the words used were words intended to stop her from going through the park. The defendant admits that she intentionally speeded up and swerved the car for the purpose of throwing him from the running board. It was not necessary that she intend to injure him. To constitute an assault it is enough wilfully to set in motion a force which in its ordinary course causes an injury. *Horne v. Mandelbaum,* 13 Ill. App. 607. This, defendant admits doing, and it was an actionable assault unless she believed, and had reasonable ground for belief, that such action was immediately necessary to prevent injury to herself or child.

As her sole justification for intentionally causing plaintiff to be thrown from the car, defendant says that he did not wear a uniform or otherwise indicate that he was an officer on duty; that while she knew of the opera being conducted in the park, yet she did not know the park was closed to traffic; that she was frightened when she saw him looking at her and that when he asked her where she was going and when he took hold of the car by the window and stepped on the running board, she feared he was after the baby or was a degenerate. However, she further testified (quoting from the abstract), that after plaintiff was thrown off the car, "I yelled at him. I said 'You damn fool.' I was looking out of the window trying to see him. When I realized I had not run over him, I was mad at him. I wanted to tell him what I was thinking," and that she thereupon made a U turn, drove back and stopped right by where he sat. The fact that all this happened at five o'clock in the afternoon on a public street with numerous cars and people in the immediate vicinity, together with her remark and immediate return to the man who she says had frightened her, tends to discredit her contention that she mistakenly thought he was a degenerate or a kidnaper. Such conduct is not consistent with her excuse.

If defendant in good faith believed that the barricade was erected for some other purpose than to stop entrance to the street and did not see the "Street Closed" sign, and did not suppose plaintiff was a police officer, and if she in fact feared plaintiff and believed him to be attempting harm to her or her child and if her mistake in so thinking was excusable under all the circumstances, that would constitute justification for using such reasonable force as necessary to escape plaintiff.

On the other hand, if the admitted words and conduct of defendant at the time and following the injury of plaintiff are inconsistent with such belief or if the exist-

ence of the barricade and "Street Closed" sign in connection with the summer opera, and plaintiff's words and actions and all the other circumstances of which defendant had knowledge would not justify any such belief on her part, then she was guilty of an assault.

Whether the mistake was in fact made and whether, if so made, it was excusable in the light of all the circumstances leading up to and surrounding the commission of the act, were matters to be resolved by the jury. *Courvoisier v. Raymond*, 23 Colo. 113, 47 Pac. 284.

█ It is next urged that plaintiff's injuries resulted from his own acts and omissions and that plaintiff was bound to anticipate the natural result of his acts. Had plaintiff accidentally fallen from the running board when he attempted to stop defendant's car, there would have been merit to this contention, but when the driver of a slow moving car failed to heed either the blockade and street sign or plaintiff's signal and request to stop and he stepped on the running board to repeat his request, he was not bound to anticipate as the natural result of this act that the driver would deliberately speed up and swerve the car and give it "all it had" for the purpose of throwing him off.

Counsel cite authorities having to do with negligence of a driver in failing to stop for a signal and others concerning negligence where guests were riding on the running board. In the case at bar plaintiff's injury was not caused by negligence, either of himself or of defendant, but by the admittedly intentional act of defendant in the application of force to her car for the purpose of throwing plaintiff from the running board. Moreover, plaintiff was not on the running board for the purpose of riding thereon, but was there in the attempted performance of his duty to stop the car. The questions of negligence or contributory negligence are not involved.

█ It is next urged that the verdict was against the manifest weight of the evidence. A careful reading of

the entire record convinces us that there was ample evidence to support the verdict, largely based on defendant's own testimony. The facts are sufficiently in dispute so that reasonable men might reach different conclusions; therefore, it was the function of the jury to resolve them. Although the trial court might not agree with the verdict of the jury, that would not justify it in disturbing the verdict, and the fact that we might arrive at a different conclusion from that reached by the jury would ·not alone justify ·us in upholding the action of the trial court.

It is finally urged that the court erred in refusing to give defendant's requested instruction numbered three, asserting as a matter of law that. plaintiff had no right to step on the running board of the car driven by the defendant without defendant's consent and that if he did so he was a trespasser. When defendant failed to stop her car at the barricade and failed to heed plaintiff's attempts to prevent its entrance, plaintiff in performance of his duty was under obligation to take such reasonable steps as were necessary to stop the car. Authority of the police department to close the park to automobile traffic in such case is not challenged and plaintiff's employment and delegation to halt traffic at that point fully appears from the record. We cannot say, as a matter of law, that his action was unreasonable, and consequently the instruction was properly refused.

We find no errors of law in the record and ample evidence to support the verdict. Accordingly, the final judgment of the court below is reversed and the cause remanded with instructions to the lower court to reinstate the verdict of the jury and former judgment in favor of plaintiff thereon.

CHIEF JUSTICE BAKKE and JUSTICE BURKE dissent.

MR. CHIEF JUSTICE BAKKE, dissenting.

I think the judgment of the trial court should be affirmed because the plaintiff by his own acts justified

the conduct of the defendant as a matter of law. Counsel for plaintiff states the proposition as follows: "In the final analysis, then, the defendant in this case was guilty of an assault upon the plaintiff unless the plaintiff by his own acts justified the conduct of the defendant."

The undisputed testimony shows that there was nothing in plaintiff's appearance to indicate that he was an officer, and that he was regularly employed by the city in "keeping undesirables out of the park, particularly degenerates." If the city was sufficiently concerned to employ a man for that type of work, I am not in favor of penalizing a woman, driving through a park with a two-year-old child at her side, for fearing a man who was acting peculiarly.

Counsel for plaintiff also admits, at least inferentially, that his client would not have a case "if the plaintiff without warning, had dashed from the curb and thrown himself on defendant's car or 'jumped' on the running board in a careless manner and in such a way as to induce fright." I think the record here shows just that. Plaintiff admits running after defendant's car and that he "jumped" on the running board thereof. On the question as to whether plaintiff was "careless" in so doing, I think if this action had been based upon negligence, the court would have held that he was contributorily negligent as a matter of law. As to inducement of fright, the uncontradicted testimony of a disinterested witness (Bemus) was, that after the affair was over, defendant still was nervous, and that she asked to be driven home.

It is my conclusion that the above is sufficient to indicate that counsel for plaintiff, by his own analysis of the case, concedes that the trial court was warranted in setting aside the verdict.