MOORE v. ROSECLIFF REALTY CORPORATION.

Civ. No. 8008.

United States District Court
D. New Jersey.

Feb. 23, 1950.

Markley & Broadhurst, Jersey City, N. J., for plaintiff.

William George, Jersey City, N. J., for defendant.

SMITH, District Judge.

The plaintiff brought this action to recover damages for personal injuries sustained when he fell or was thrown from a "bob sled," an amusement device, which was admittedly owned and operated by the defendant. The defendant raised the usual defenses, to wit, absence of negligence, contributory negligence, and the assumption of risk. The jury returned a verdict in favor of the plaintiff and against the defendant and assessed the damages at $45,000. The action is before the Court at this time on a motion for a new trial filed by the defendant under Rule 59 of the Federal Rules of Civil Procedure, 28 U.S.C.A.

### Sufficiency of Evidence.

There were fourteen grounds stated in the motion. We have considered all of them but find it necessary to discuss only the principles applicable to the main ground, to wit, the verdict was contrary to the weight of the evidence. The decision of the Court on the question raised by this ground is necessarily determinative of the issues raised by several related grounds stated in the motion.

It must be conceded that the evidence, the testimony and the inferences reasonably deducible therefrom, must be viewed in the light most favorable to the plaintiff. The sufficiency of the evidence thus viewed must be tested by the local law where, as here, the local law is determinative of the substantive rights of the litigants. Waldron v. Aetna Casualty & Surety Co., 3 Cir., 141 F.2d 230, 234; Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 166 F.2d 908, 916. It is our opinion that it cannot be said that the evidence in the instant case, viewed in the light of

these established principles, is not sufficient to support the verdict. Connors v. Hudson City Gravity Coaster Co., 130 A. 443, 3 N.J.Misc. 989; Jackson v. Dreamland Coaster Co., 135 A. 56, 4 N.J.Misc. 924; Schnoor v. Palisades Realty & Amusement Co., 112 N.J.L. 506, 172 A. 43; See also Tompkins v. Burlington Island Amusement Co., 102 N.J.L. 411, 132 A. 670.

The testimony of the witnesses called by the respective parties was in conflict. It was, however, the exclusive province of the jury to judge the credibility of the witnesses, to weigh the testimony, and to draw inferences from the credible testimony. Tennant v. Peoria & P.U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520; Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 90 L.Ed. 916; Travelers Ins. Co. v. Warrick, 5 Cir., 172 F.2d 516; Shiffler v. Pennsylvania R. Co., 3 Cir., 176 F.2d 368; See also Bennett v. Busch, 75 N.J.L. 240, 67 A. 188, 189; Emery v. Fritchey, 112 N.J.L. 161, 169 A. 828, 829; Jackson v. Delaware, L. & W. R. Co., 111 N.J.L. 487, 170 A. 22, 23. The courts "are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Tennant v. Peoria P. U. Ry. Co., supra; Casey v. American Export Lines, 2 Cir., 173 F.2d 324, 328; See also Finnegan v. Goerke Co., 106 N.J.L. 59, 147 A. 442, 443; Nusser v. United Parcel Service of New York, 3 N.J.Super. 64, 65 A.2d 549, 551, and the other cases herein cited.

The general principle which must be applied was succinctly stated by the Supreme Court in Tennant v. Peoria & P. U. Ry. Co., supra, 321 U.S. at page 35, 64 S.Ct. at page 412, 88 L.Ed. 520, as follows: "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. (Citations omitted). That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

It was further stated by the Supreme Court in the case of Lavender v. Kurn, supra, 327 U.S. at page 653, 66 S.Ct. at page 744, 90 L.Ed. 916: "It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." This principle would seem to limit not only the right of the appellate court but also the right of the trial court.

It was held by the Supreme Court in the case of Lavender v. Kurn, supra, 327 U.S. at page 652, 66 S.Ct. at page 744, that "it would be an undue invasion of the jury's historic function for an appellate court to weigh the conflicting evidence,

judge the credibility of witnesses, and arrive at a conclusion opposite from the one reached by the jury." It necessarily follows that it would likewise be an undue invasion of the jury's historic function for the trial court to weigh the conflicting evidence, judge the credibility of witnesses, and arrive at a conclusion opposite from the one reached by the jury.

■ The defendant also urges in support of the present motion that it was "error for the Court to fail to direct a verdict in favor of the defendant" at the close of the plaintiff's case and at the close of the evidence. It is our opinion that this ground is without merit. It has been held by the Court of Errors and Appeals of this state that when "a case involves a controverted question of fact, in which the evidence is conflicting, and out of the conflict may be gathered sufficient evidence to support a verdict for either party, * * *, the issue of fact should be left to the jury, and the court should not direct." Emery v. Fritchey, supra [112 N.J.L. 161, 169 A. 829].

The principles hereinabove discussed are applicable not only to the question raised by a motion for a new trial but also the question raised by a motion for a directed verdict where, as here, the ground urged is the insufficiency of the evidence to support the claim of the plaintiff.

### Supplemental Motion.

■ The defendant filed a supplemental motion for a new trial on November 25, 1949. The only ground urged in this motion was "newly discovered evidence." The defendant is entitled to prevail on this motion only upon proof, first, that the newly discovered evidence is not merely cumulative, and second, that the evidence could not have been discovered prior to trial by the exercise of reasonable diligence. This is the accepted rule in the federal and state courts. F. W. Woolworth Co. v. Seckinger, 5 Cir., 125 F.2d 97, 98; Rome Grader & Machinery Corp. v. J. D. Adams Mfg. Co., 7 Cir., 135 F.2d 617, 621; United States v. Bransen, 9 Cir., 142 F.2d 232, 235; Anderson v. Tway, 6 Cir., 143 F.2d 95, 105; Hoban v. Sandford & Still-

man Co., 64 N.J.L. 426, 45 A. 821, 823; Christie v. Petrullo, 101 N.J.S. 492, 128 A. 853, 854; Dunn v. Parker & Graham, 159 A. 613, 614, 10 N.J.Misc. 492; Paradise v. Great Eastern Stages, Inc., 114 N.J.L. 365, 176 A. 711, 712. The evidence offered by the defendant by affidavit seems to clearly indicate that both requirements are absent in the instant case.

The "newly discovered evidence" is the statement of one Loren L. Perkins, a witness to the accident. This statement is contained in a letter dated November 14, 1949, addressed to the attorney for the defendant. A copy of the letter is annexed, and it will be observed that the statements therein contained are not under oath. We shall, however, for the purposes of this motion, overlook this defect and consider the statements as though made under oath.

A relevant and material statement made by Perkins reads as follows: "He (the plaintiff) was riding backwards without using the safety strap I believe. He refused to face forward on the demand from the attendant of the 'Bob Sled,' but I can't remember what was said now." This statement is somewhat indefinite but, considered in the light most favorable to the defendant, it would seem to be merely corroborative of the testimony of one Jean Campbell, a witness called by the defendant at the trial.

The relevant testimony of the witness Campbell follows:

"Q. Is this the young man here? A. That's right, sir.

"Q. What was he doing at that moment? A. Well, it was about a second before he fell out of the car; at that time he was standing up in the first car facing me.

"Q. And what was he doing? A. Well, I couldn't really say whether he was trying to get in the second car at the time or trying to attract someone's attention in a car behind. The only thing really that I noticed was that he was up in the car facing me the moment before he fell out.

"Q. In other words, facing backwards? A. That's right.

"Q. From the direction in which the car was going? A. That's right.

"Q. And he was standing up? A. That's right."

The witness further testified, in response to questions by the Court, as follows:

"The Court: And you were riding in the car in back?

"The Witness: Yes.

"The Court: Now, the second before this happened, or second or two, I think you said, he was facing you?

"The Witness: Yes.

"The Court: And he was in a standing position?

"The Witness: Yes, sir.

"The Court: Just how was he facing you and in what position was he standing?

"The Witness: Well, he would have been turned around.

"The Court: His body?

"The Witness: His whole complete body was turned around.

"The Court: That is what I am trying to find out. His whole body had been turned around to you?

"The Witness: That's right.

"The Court: All right."

An additional relevant statement made by Perkins reads as follows: "I believe he had been drinking quite heavy before the accident." This statement, however, is nothing more than an expression of an opinion, but even so, considered in the light most favorable to the defendant, would tend primarily to contradict the testimony of the plaintiff, who denied at the trial that he had been drinking heavily. A general statement of this character, lacking essential supporting facts, would not warrant the granting of a new trial.

It is our opinion that the defendant has failed to prove that the "newly discovered evidence" could not have been discovered prior to trial by the exercise of reasonable diligence. This action was commenced on May 4, 1946, when the complaint was filed, and the service of process was made on May 14, 1946. The defendant filed its answer on July 29, 1946. Thereafter the case remained on the inactive calendar until December 6, 1948, when it was placed on the trial calendar on the stipulation of the attorneys and by order of the court. The present attorney for the defendant, according to his affidavit, was "in full charge of the defense" from the time service of process was made.

The attorney for the defendant had knowledge that one "L. L. Perkins" had witnessed the accident, but he made no effort to locate him until December 28, 1948, approximately three weeks after the case had been restored to the active trial calendar. The affidavits on file failed to disclose what efforts, if any, were made prior thereto, although it is admitted that the present attorney for the defendant was "in full charge of the defense" for a period of more than two years. It is reasonable to assume that no effort was made to locate the witness until December 28, 1948.

It appears from an affidavit filed by the defendant in support of the present motion that on December 28, 1948 the attorney for the defendant addressed a letter (Exhibit "A") to the "Bureau of Personnel, Navy Department, Washington, D. C." This letter requested the Navy Department to furnish "the present address" of the witness Perkins and another. Thereafter the attorney for the defendant was advised by letter, which he admittedly received on February 23, 1949, that: "current policy prohibits the furnishing of addresses of members of the naval service to other than members of the enlisted person's immediate family or Upon Presentation of a Court Order." (Emphasis by the Court).

It is apparent from this correspondence that the Navy Department would have disclosed the address of the witness upon presentation of a court order. The defendant, however, made no application for such an order even though there was ample time within which an appropriate application could have been made. The case, although listed on the trial list of February 17, 1949, was not reached until March 1, 1949; the trial of the case was con-

cluded on March 4, 1949. The failure of the defendant to seek the assistance of the Court at that time was inexcusable. The explanations which the attorney for the defendant now advances are not convincing.

There is further evidence of the defendant's lack of diligence contained in the affidavits presented by the defendant. It appears from the affidavit of one John J. Lemken that on April 29, 1949 the "Department of the Navy, Bureau of Naval Personnel" furnished the address of the witness Perkins to the attorney for the defendant. Thereafter the attorney for the defendant apparently made no effort to communicate with the said witness until October 25, 1949, when he addressed a letter to the witness at the address furnished by the Department of the Navy. This letter was answered by the said witness on November 14, 1949. It is apparent that the defendant was not diligent even after he had obtained the address of the witness, but delayed the matter further for more than six months.

This case was pending for more than two years before it was restored to the active trial calendar. It seems apparent that the exercise of reasonable diligence prior to March 1, 1949 would have enabled the defendant to either take the deposition of the witness or produce him in court at the trial. The litigant who takes no action to ascertain the addresses of his witnesses until the eve of the trial cannot be said to exercise reasonable diligence, especially where, as here, there was a period of more than two years in which the addresses of the witnesses could have been easily ascertained.

It is our opinion that the "newly discovered evidence" upon which the defendant now relies could have been discovered prior to trial by the exercise of reasonable diligence. See United States v. Bransen; Christie v. Petrullo; Dunn v. Parker & Graham, Inc., all supra.

The Supreme Court of New Jersey in the case of Christie v. Petrullo, supra, 128 A. at page 854, in passing on a similar motion, stated: "These rules of law must be strictly enforced. If not strictly enforced, it would open the door for litigants to withhold available testimony, and then, if the result of the trial was adverse, resort could be had under the guise of newly discovered testimony to obtain another trial in which the litigant could correct the mistakes made in the former trial and perhaps secure a different result. The aim of the law should be to force litigants to the fullest preparation of their cases before trial. This can best be accomplished by strictly enforcing the principles of law governing new trials."

### Conclusion.

The motion for a new trial is denied.

*"Exhibit 'F'*

"Nov. 14, -49
Loren L. Perkins
Black Butte Rt.
Cottage Grove, Ore.

"William George
Counselor at Law
921 Bergen Ave. J.C.N.J.
"Dear Mr. George:

"In answer to your letter of Oct. 25, 1949.

"Yes, I remember the accident at Palisades Park of July 1945.

"I was seated in the car behind the victim of the accident.

"He was riding backwards with-out using the safety strap I believe. He refused to face forward on the demand from the attendant of the "Bob Sled," but I can't remember what was said now. It may be in the statement I gave at the time of the accident.

"The victim went out of the front car at the top of the first run and was ran over by the first car & ended up under the second car, the one in which I was seated in.

"I believe he had been drinking quite heavey before the accident.

"I have to close now & go to work.

"I hope this can be of some use.

"Sincerely yours,
"/s/ Loren L. Perkins"